**Wilma CAGE, et al., Plaintiffs,**

v.

**GENERAL MOTORS DEFINED BENEFIT SALARIED PLAN, et al., Defendants.**

**No. 97–71143.**

United States District Court, E.D. Michigan, Southern Division.

Sept. 24, 1999.

Joseph Ahern, Troy, MI.
Ronald Kravitz, San Francisco, CA.
David Davis, Birmingham, MI.

Allen Engerman, Boca Raton, FL.

## ORDER GRANTING DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

EDMUNDS, District Judge.

This matter comes before the Court on Plaintiff's motion for summary judgment and on Defendants' renewed motion for summary judgment. The Defendants maintain a pension plan. This case arises from Plaintiff's ERISA-based claims alleging denial of benefits and breach of fiduciary duty. Plaintiff also seeks a declaratory judgment stating that the class Plaintiffs[1] are entitled to the full amount of their benefits under the Plan; that the purported denial of benefits violates ERISA; and that the Defendants violated ERISA-imposed fiduciary duties.

A year ago, this Court stayed the case pending the resolution of this matter before the IRS. The IRS subsequently issued a Voluntary Compliance Resolution (VCR) under the terms of which the IRS approved the Defendants' proposed correction of its admitted underpayment to Plaintiff. As set forth below, the Plaintiff's claims are now moot. To the extent that they are not moot, the Plaintiff's "new" contention that GM erred in the recalculation of Plaintiff's benefit is subject to the exhaustion of administrative remedies requirement. Accordingly, the Defendants' renewed motion for summary judgment is GRANTED and the Plaintiffs' motion for summary judgment is DENIED.

### I. Overview of Remaining Issues

Even though the Defendants (collectively "GM") admitted responsibility for having miscalculated Plaintiff's benefits, Plaintiff argues that three issues still remain: (1) whether GM understated Cage's benefits by applying a pre-retirement mortality assumption to the re calculation of Cage's benefits; (2) whether the interest rate applied to compensate participants for the delay in the payment of benefits was appropriate under the circumstances; and (3) whether Plaintiff is entitled to an award of reasonable attorney fees pursuant to ERISA, 29 U.S.C. § 1132(g)(1).

As discussed more fully below, the Plaintiff received the relief she sought in her complaint, and to that extent, her claims are now moot. Even if the issue of whether GM erred in the recalculation of Plaintiff's benefit is viable and ripe for adjudication, the efficacy of the recalculation is subject to the administrative exhaustion requirement. The Plaintiff never submitted her claim that GM improperly applied a mortality factor in determining the accrued benefit canceled by withdrawal of employee contributions to the appeal procedures available under the GM retirement plan. Accordingly, this Court cannot review a matter that was not presented to the plan administrator.

As for the interest rate issue, the determination of what interest rate should apply in this context is left to the sound discretion of the district court. The rate applied by the Plan Administrator, 7% per annum, is reasonable considering the 52–week T-bill rates during the relevant time period.

Once those two issues are resolved, it becomes clear that in the wake of the IRS' Compliance Resolution, which approved GM's proposed corrective action, the Plaintiff's sole remaining issue is that of attorney fees. Under 29 U.S.C. § 1132(g)(1), a district court may allow a reasonable attorney fee to either party in a lawsuit brought under ERISA. In a recent Ninth Circuit case, which reversed a district court order denying plaintiff attorney fees in a case similar to this one, the court of appeals made clear that an ERISA plaintiff is entitled to attorney fees for work up until the time the plaintiff

---

1. No class has been certified.

learns conclusively that the defendant employer will pay her claim in full. *S.A. McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1174 (9th Cir. 1999). In *McElwaine*, the court held that the plaintiff was entitled to fees from the time she filed her suit until the date on which the employer notified one of plaintiffs' attorneys that the IRS had recently approved the employer's proposed correction plan. *Id.* In light of this recent holding, and its similarity to the posture of this case, an award of fees is appropriate.

## II. Facts

### A. Parties

Plaintiff Wilma Cage worked for General Motors for 24 years during which time she participated in their Defined Benefit Salaried Plan ("Plan"). The Defendants ("GM") are General Motors Defined Benefit Plan, and the members of the General Motors Employee Benefit Plan Committee in their role as fiduciaries.

### B. Plaintiff's Election under the Plan

The Plan's benefits are divided into two parts, Part A and Part B. Part A benefits are non-contributory and are paid entirely by GM. Part B benefits are based on contributions from GM and from the employees. The Plan offers eligible participants the option of receiving a single-sum payment in full and final satisfaction under the Plan.[2]

On July 24, 1995, the Plaintiff elected to receive a lump sum payout pursuant to the terms of this section. Subsequent to this, on August 3, 1995, the Plaintiff requested that GM pay her all of the remaining funds she was entitled to under the Plan. On August 30, 1995, in accordance with Plaintiff's instructions, GM paid the Plaintiff her lump sum benefit pursuant to her request.

On March 22, 1996, GM received a letter from Mr. Holzman, a representative from the National Center for Retirement Benefits, Inc. which indicated that Ms. Cage had been underpaid in the amount of $1,023.05. Mr. Holzman did not specifically identify the error in GM's calculations, but rather recognized that under GM's computations, the portion of the total monthly accrued benefit attributable by employee contributions was of a different proportion than that attributable to employer contributions. The Plaintiff filed the instant action on March 20, 1997, after allegedly having exhausted her administrative remedies.

On March 24, 1998, GM confirmed that the Plaintiff had been underpaid. Specifically, GM admitted there was an operational error in the valuation of the accrued benefit canceled by the withdrawal of employee contributions. The error resulted when GM amended the Plan in order to comply with 1987 and 1989 amendments to sections 411(c) and 417(e) of the Internal Revenue Code and a subsequent Revenue Ruling, Rev. Rul. 89–60, which describes the procedure for determining the accrued benefit canceled by the withdrawal of employee contributions plus interest. While the Plan was amended to reflect the

---

**2.** Section 2(g) of the Plan provides,
> Where the present value of such benefit is more than $3,500, an otherwise eligible former employee . . . will have an option to receive a single-sum payment . . . Any such single-sum payment shall be in full and final satisfaction of any and all benefit entitlement under this Program, and is irrevocable when paid. Solely for purposes of this subsection (g), the interest rate to be used in the determination of the present value of any single sum determined hereunder will be the Pension Benefit Guaranty

> Corporation's applicable interest rate in effect at the beginning of the plan year in which the single sum is paid. The applicable interest rates shall be used where the present value of the benefits is not in excess of $25,000. Where the present value of the benefit based on applicable interest rates exceeds $25,000, 120% of the applicable interest rates shall be used, provided the remaining lump-sum value not be less than $25,000.

Defendants' Exb. P, pg. 97.

changes in the law and to account for Rev. Rul. 89–60, the calculation procedure was not changed. Due to the failure to change the calculation procedure, the Plan erroneously calculated the benefit based on 120 percent of the Federal mid-term rate, rather than the interest rate provided by I.R.C. § 417(e)(3), as the change in the law required. In addition, the Plan Administrator used a fixed conversion factor, rather than the relevant I.R.C. § 417(e)(3) actuarial assumptions in accordance with Rev. Rul. 89–60.

After recognizing the error in the Plan, GM offered to pay Plaintiff $1,023.05 plus interest at 7% annum. During its review of the problem, GM identified 414 individuals who withdrew their employee contributions and subsequently cashed out their remaining accrued benefit. After reviewing the 414, GM determined that 152 had been underpaid. GM has notified these individuals of the additional amounts owed to them.

### C. The Voluntary Compliance Resolution

On October 22, 1997, GM filed a Voluntary Compliance Resolution ("VCR") with the IRS. The VCR request described the operational error in the administration of the Plan and outlined a mechanism for correcting the error to ensure that the affected individuals received the proper benefits under the Plan. *See* Defendant's Exh. G. Pursuant to GM's VCR proposal, Cage would be entitled to $1,023.05 plus 7% interest per annum from August 30, 1995.

At a status conference on July 31, 1997, Plaintiff suggested, *for the first time,* that the underpayment to her exceeded the $1,023.05 sought previously because GM erred by applying a pre-retirement mortality factor in determining the accrued benefits canceled by reason of the withdrawal

of Plaintiff's contributions.[3] Plaintiff suggested that a different actuarial factor should be applied to employee contributions than is applied to employer contributions. GM contends that its computations are correct and that the same factor is used regardless of whether the contributions are made by the employer or the employee.

On May 21, 1998, this Court entered an order staying the case pending a decision from the IRS on GM's VCR. On March 9, 1999, the IRS issued a compliance statement approving GM's proposed corrective action. *See* Defendants' Exb. N. The Defendants now move this Court for summary judgment, arguing that the Plaintiff has been made whole by their corrective action. The Plaintiffs have also reinstated their previously filed motion for summary judgment.

### III. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex,* 477 U.S. 317, 323,

---

**3.** Counsel previously indicated to the Court that this recalculation error was raised for the first time on November 12, 1997. The supplemental briefs which were filed at the di-

rection of the Court following oral argument on the cross-motions for summary judgment reveal that the status conference occurred July 31, 1997.

106 S.Ct. 2548, 91 L.Ed.2d 265. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505.

The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505.

## IV. Analysis

The parties agree that the Plan is governed by ERISA, and that all of Plaintiff's claims derive therefrom. 29 U.S.C. § 1001, *et. seq.; Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62–63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Roberson v. Metropolitan Life Insurance Co.,* 682 F.Supp. 907, 910 (E.D.Mich.1988).

### A. Plaintiff Obtained Relief Sought in Complaint

#### 1. No case or controversy

■ A plaintiff's claim for benefits under an ERISA plan are properly dismissed as moot if the plaintiff receives the benefits sought in the complaint. *Harrison v. United Mine Workers of America,* 941 F.2d 1190, 1193 (11th Cir.1991). A federal district court's subject matter jurisdiction extends only to actual cases and controversies. *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). A plaintiff seeking redress in federal court must demonstrate "(1) an actual or threat-

ened injury; (2) an injury that is 'fairly traceable' to the conduct; and (3) an injury that is likely to be redressed by a favorable decision." *Jorman v. Veterans Admin.,* 830 F.2d 1420, 1424 (7th Cir.1987). An injury is no longer redressable where "the parties lack a legally cognizable interest in the outcome." *Powell,* 395 U.S. at 496, 89 S.Ct. 1944. Where a plaintiff receives all of the relief requested, there is no longer a case or controversy. *Harrison,* 941 F.2d at 1193.

Plaintiff, in her complaint, claims entitlement to additional benefits in the amount of $1,023.05 plus interest. Plaintiff's Complaint at ¶ 19. This is the exact amount Defendants have offered to her and to the other participants who were wrongfully denied the full amount of their lump sum benefit. There is no longer a case and controversy where the Defendants have admitted their liability as plead in Plaintiff's complaint. *Id.* Plaintiff never amended her complaint to set forth a claim based on the alleged discovery of an additional error in GM's recalculation of the accrued benefit.

#### 2. Exhaustion of Administrative Remedies

■ Even assuming that a case or controversy remains with respect to Plaintiff's contention that GM miscalculated her benefit by improperly applying a preretirement mortality assumption, Plaintiff did not exhaust her administrative remedies with respect to this issue. Federal law requires that where administrative remedies are available they must be exhausted as a precondition to filing a suit under ERISA. *Hammon v. DHL Airways, Inc.,* 165 F.3d 441, 451 (6th Cir.1999); *Baxter v. C.A. Muer Corp.,* 941 F.2d 451, 453 (6th Cir.1991); *Miller v. Metropolitan Life Insurance Co.,* 925 F.2d 979, 986 (6th Cir. 1991). The exhaustion requirement serves to provide a sufficient record of the administrator's interpretation of its plan and further delineates and clarifies the remaining issues. *Amato v. Bernard,* 618 F.2d 559

(9th Cir.1980). Where a plaintiff demonstrates that exhaustion would be futile, the district court may excuse non-exhaustion. *Costantino v. T.R.W., Inc.,* 13 F.3d 969, 973 (6th Cir.1994).

■ It appears from the pleadings that Plaintiff raised the preretirement mortality factor issue for the first time in July of 1997. That is four months after the Plaintiff filed her complaint in this case, pursuant to which she sought an additional $1,023.05 in benefits, which she has subsequently been offered by Defendants. The recalculation having never been subjected to administrative review procedures, the merits of this issue are not properly before the Court for consideration.[4]

The posture of this case is similar to *S.A.McElwaine v. U.S. West,* No. CV 96–214–TUC (D.Ariz. June 5, 1997). During the pendency of the litigation in that case, and after the plan administrator agreed with plaintiff's initial claimed error, the plaintiff raised the additional contention that the plan's calculation procedures remained flawed. The plaintiff's additional contention, similar to the recalculation error alleged here, was never submitted to the plan's appeal procedures. Relying on *Amato v. Bernard,* 618 F.2d 559 (9th Cir. 1980), the district court in *S.A. McElwaine* held that due to the plaintiff's failure to raise this additional claimed error, the merits of the issue were not properly before the court. The court stated:

> Plaintiff's new claim, the inaccuracy of Defendant's date assumption used in determining the present value of Plaintiff's death benefit, should have been raised in her administrative appeal and is not properly before this Court due to her failure to exhaust administrative remedies.

*Id.* at slip. op. 3.

To consider the merits of the mortality factor issue would place this Court in the role of the plan's fiduciary administrators. There is simply no Plan Administrator decision for this court to review on this issue. Therefore, regardless of the applicable standard of review, the scope of this Court's review of a benefits claim under ERISA § 502(a) is limited to evidence submitted to the plan administrator. Here, there was no evidence presented to the plan with respect to the application of the mortality factor. There is essentially no decision on this issue which can be subjected to the arbitrary and capricious standard of review. Likewise, in the ERISA context the court cannot conduct a *de novo* review of an issue that was never presented. As the Sixth Circuit has explained:

> Although the Supreme Court did not discuss the meaning of de novo review in *Bruch,* we believe that *Bruch* contemplates that the district court will review the administrator's decision de novo, that is, without deference to the decision or any presumption of correctness, based on the record before the administrator. Thus *Bruch* does not require district courts to hear and consider evidence not presented to the plan administrator in connection with a claim. This view is consistent with the proper judicial role in ERISA cases and precedent. .... *Nothing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators, a role they would inevitably assume if they received and considered evidence not presented to administrators concerning an employee's entitlement to benefits.* . . .

*Perry v. Simplicity Engineering,* 900 F.2d 963, 966–67 (6th Cir.1990)(emphasis added). *See also Wulf v. Quantum Chemical Corp.,* 26 F.3d 1368, 1376 (6th Cir.1994); *Sandoval v. Aetna Life & Casualty Ins. Co.,* 967 F.2d 377 (10th Cir.1992)(scope of

---

4. On June 23, 1997 this Court denied Defendants' motion to dismiss, rejecting their argument that Plaintiff failed to exhaust her administrative options. The subject of that opinion dealt with Plaintiff's claim that she was entitled to the $1,023.05, not that she was entitled to more money based on the misapplication of a mortality factor.

review limited to evidence presented to plan administrator, even if standard of review is arbitrary and capricious). Accordingly, the issue of the recalculation of Cage's benefit based on the misapplication of the mortality factor is not properly before this Court.

**B. The Interest Rate**

Plaintiff's next contention is that GM has not offered to pay her an adequate amount of interest. They have offered 7% per annum. Plaintiff contends this is too low because the Plan was earning 9% or higher at the time she was denied the full amount of her benefit. Plaintiff says that since the Plan is silent with respect to the applicable interest rate, the higher of the market rate or the rate the Plan actually earned should apply.

The determination of the prejudgment interest rate for an ERISA benefits award, while not mandated under ERISA, is left within the sound discretion of the district court. 29 U.S.C. § 1132(a)(1)(B); *Ford, et. al. v. Uniroyal Pension Plan,* 154 F.3d 613, 619 (6th Cir. 1998). The award of interest must not be punitive in nature, but rather should compensate the affected participants for lost interest they could have earned if the money had not been improperly withheld. *Ford,* 154 F.3d at 618. In *Ford,* the court of appeals held that the district court did not abuse its discretion in awarding 9% prejudgment interest to the prevailing participants based on the average 52–week Treasury Bill. *Id.* at 619. The Plaintiffs in *Ford* argued for a 12% rate based on state law. The court of appeals held that the incorporation of state standards in the calculation of the interest rate may frustrate ERISA's mandate that the rate not be punitive. *Id.* at 618–19.

The Sixth Circuit noted that while the district court may look to state law for guidance as to the appropriate rate, "we have held previously that the statutory postjudgment framework set forth in 28 U.S.C. § 1961 is a reasonable method for calculating prejudgment interest awards." *Id.* at 619. According to the Table entitled "52–Week T–Bill Rate Table of Changes" the rate on 52–week T–Bills between September 1, 1996 (Plaintiff's lump sum valuation date) and May 31, 1999 (GM admitted its improper calculation of Plaintiff's benefit by letter to her dated April 14, 1999) ranged from a low of 4.242% to a high of 6.06%. 28 U.S.C. § 1961. GM's offer to pay Plaintiff 7% is more than reasonable under the circumstances and adequately compensates Plaintiff for lost interest during the relevant time period.

Plaintiff's argument that she is entitled to the interest rate the Plan earned during the relevant time period is without merit. Her contention ignores the difference between a defined benefit plan which promises fixed payments upon retirement and a defined contribution plan under which the benefit paid is based on investment performance. Plaintiff participated in the former, not the latter. Accordingly, the 7% rate is reasonable and adequate.

**C. Attorney Fees**

As mentioned briefly above, there is a basis for attorney fees in this case. *S.A. McElwaine v. U.S. West, Inc.,* 176 F.3d 1167, 1174 (9th Cir. 1999). Under 29 U.S.C. § 1132(g)(1) the district court may, in its discretion, order reasonable attorney fees to either party in an ERISA case. In deciding whether an award of fees is appropriate, the Court looks at the five-factor *Hummell* test. *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir. 1980). The Court must evaluate: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy the award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether parties requesting fees sought to benefit all plan participants or resolve a significant legal question; and (5) the relative merit of the parties' positions. *Schwartz v. Gregori,* 160 F.3d 1116, 1119 (6th Cir.1998). No single factor is

determinative, rather the court should consider each factor before exercising its discretion. *Id.*

In a recent Ninth Circuit case, the court of appeals reversed the district court's decision to deny plaintiff attorney fees in a case similar to the one at hand. *S.A. McElwaine v. U.S. West, Inc.,* 176 F.3d 1167, 1174 (9th Cir.1999) In *McElwaine,* the plaintiff discovered an error in the calculation of her ERISA plan death benefit. Before plaintiff filed suit, the defendant-employer, U.S. West, had already applied to the IRS for a VCR, seeking approval of its proposed corrective action. Because U.S. West did not specifically promise to pay plaintiff but instead sent her a non-committal letter indicating that it was seeking IRS approval for its corrective action plan, the plaintiff was forced to file suit in order to protect her rights, and the rights of nearly 3,000 other affected plan participants. No class was ever certified. The IRS issued a compliance statement pursuant to which plaintiff and the other affected individuals were offered the amount sought in the complaint.

After considering cross-motions for summary judgment, the district court granted defendant's motion and dismissed plaintiff's motion as moot because she received what she sought under the complaint.[5] *S.A. McElwaine v. U.S. West, et. al.,* No. 96–214 (D.Ariz. June 5, 1997). The district court also denied the plaintiff's motion for attorney fees without engaging in much analysis. On appeal, the Ninth Circuit held that an award of attorney fees was appropriate under the *Hummell* test because (1) U.S. West withheld assurances from plaintiff making it necessary for her to file suit in order to avoid the running of the statute of limitations; (2) U.S. West could pay the fee without difficulty or hardship; (3) a fee award would deter employers from requiring participants to file suit to preserve their claim; (4) the miscalculation discovery aided nearly 3,000 plan participants; and (5) plaintiff's position was more meritorious because the mistake was the employer's and the employer forced her to file suit. *See McElwaine,* 176 F.3d 1167, 1173.

█ This case is similar to *McElwaine.* First, there is some evidence that GM may have misstated the facts by taking credit for having discovered the calculation error when it was Plaintiff who initially brought the matter to GM's attention. GM also summarily denied Plaintiff's claim at the administrative level and on appeal. Then, after losing its motion to dismiss in this Court, GM conceded that the allegations in the complaint were accurate and admitted that it miscalculated Plaintiff's benefit as she had suggested. Second, GM can pay the award without hardship. Third, an award of fees would deter other employers from summarily denying a participant's claim at the administrative level, only to admit error later on when a lawsuit is filed. Fourth, Plaintiff's discovery of the error has benefitted at least 152 Plan participants. Finally, considering the relative merits of the parties' position, it seems the Plaintiff's position is more meritorious because GM erred initially and Plaintiff discovered the error. Her discovery eventually lead GM to request a compliance statement from the IRS. In that regard, an award of fees is more compelling in this case than it was in *McElwaine,* because Plaintiff's suit prompted GM to remedy its mistake; whereas in *McElwaine,* U.S. West had already sought compliance before plaintiff sued, yet plaintiff there was still entitled to a fee award. The Plaintiff here is entitled to reasonable attorney fees.

The Court is awaiting briefing from the Defendants in response to Plaintiff's counsel's submission in support of its claim for

---

5. Much like the Plaintiff in this case, the plaintiff in *McElwaine* argued at the district court level that an additional calculation error had been made. After the district court judge held that plaintiff's claim was moot, she only appealed the attorney fee portion of the order.

attorney fees. Accordingly, while the Court finds that some award of fees is appropriate, the amount of the fee, and the time period for which an award of fees is appropriate, will be addressed in a subsequent opinion.

## V. Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows:

The Defendants' renewed motion for summary judgment is GRANTED. The Plaintiff's motion for summary judgment is DENIED. In addition, the Plaintiff is entitled to reasonable attorney fees.

IT IS SO ORDERED.