Joseph J. PETERSON,
Plaintiff–Appellee,

v.

CONTINENTAL CASUALTY
COMPANY, Defendant–
Appellant.

Docket No. 01–7068.

United States Court of Appeals,
Second Circuit.

Argued Nov. 6, 2001.

Decided Feb. 19, 2002.

Mark Scherzer (A. Christopher Wieber, on the brief), New York, NY, for Plaintiff–Appellee.

Randi F. Knepper, Del Mauro, DiGiaimo & Knepper, P.C., New York, NY, for Defendant–Appellant.

Before: MINER, McLAUGHLIN, and STRAUB, Circuit Judges.

STRAUB, Circuit Judge.

Defendant–Appellant Continental Casualty Company ("Continental")[1] appeals from a judgment entered in the United States District Court for the Southern District of New York (Colleen McMahon, *Judge*) directing Continental to pay benefits to Plaintiff Appellee Joseph Peterson pursuant to Peterson's long-term disability plan. For the reasons stated herein, we vacate the judgment of the District Court regarding Peterson's eligibility for long-term benefits beyond the initial twenty-four-month period described by his plan. We additionally vacate the District Court's award of attorneys' fees and costs that Peterson incurred during administrative proceedings before filing suit in the District Court but affirm the award of fees and costs incurred by Peterson after suit was filed. Finally, we hold that each party shall bear its own costs in connection with this appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are fully detailed in the District Court's two prior published dispositions, *see Peterson v. Cont'l Cas. Co.*, 116 F.Supp.2d 532 (S.D.N.Y.2000); *Peterson v. Cont'l Cas. Co.*, 77 F.Supp.2d 420 (S.D.N.Y.1999); familiarity with the

record is assumed and only the facts necessary for disposition of this appeal are recounted. Peterson was employed by CBS Broadcasting, Inc. ("CBS") for 37 years, serving most of that time as a venue production manager for the company. In September 1997, Peterson was diagnosed as suffering from carpal tunnel syndrome in his hands and an injury to his back. Because these conditions rendered him unable to work as a venue production manager, Peterson was temporarily reassigned to another position requiring no physical activity. In May 1998, Peterson realized that he would be unable to return to his old position and applied for benefits pursuant to the CBS-sponsored short and long-term disability plans, which were issued and administered by Continental.

Under the Continental plans, eligible employees can receive three types of disability benefits. First, the short-term disability plan allows eligible employees to receive 100 percent of their salary for thirteen weeks. Once short-term benefits are exhausted, an employee may receive benefits under the long-term disability plan. However, the long-term plan is further divided into two types of benefits: (1) benefits payable for an initial twenty-four-month period, referred to as the employee's "occupation period" (benefits provided for this period are referred to herein as "occupation-period benefits"); and (2) after the conclusion of the occupation period, benefits payable until the employee's 65th birthday if the employee is less than 61 years of age when injured (benefits provided for this period are referred to herein as "permanent benefits").[2] Both the short

---

1. Continental is also referred to as "CNA" and the "Claim Administrator."

2. Although we use the term "permanent benefits," benefits are available to an injured employee as follows: if the employee is younger than 61 years old when injured, benefits are payable until age 65; if the injured employee is older than 61 when injured, benefits are

and long-term plans vest discretionary authority in Continental to make coverage decisions regarding employee benefits under the plans.

Employees are eligible for long-term disability benefits if they can demonstrate a "Total Disability." However, the plan defines Total Disability differently for occupation-period and permanent benefits. According to the plan, to receive occupation-period benefits:

"Total Disability" means that, during the Elimination Period and Your Occupation Period[3] shown in the Schedule of Benefits, You, because of Injury or Sickness, are:

(1) continuously unable to perform the substantial and material duties of Your regular occupation;

(2) under the regular care of a licensed physician other than Yourself; and

(3) not gainfully employed in any occupation for which You are or become qualified by education, training or experience.

To be eligible for permanent benefits, the policy provides:

After the Monthly Benefit has been payable for Your Occupation Period, "Total Disability" means that, because of Injury or Sickness, You are:

(1) continuously unable to engage in any occupation for which You are or become qualified by education, training or experience; and

(2) under the regular care of a licensed physician other than Yourself.

Peterson applied for both short and long-term benefits, claiming that his condition rendered him incapable of performing the duties of a venue production manager. Peterson was granted short-term benefits from March 15, 1998 to August 10, 1998 while his claims were being investigated. On July 30, 1998, Continental notified Peterson that his claims for short and long-term benefits were denied. Continental determined that Peterson had not proven that he was continuously unable to perform the substantial and material duties of his occupation. Peterson appealed the decision in Continental's internal appeals process, but was unsuccessful.

■ Peterson then initiated the instant suit in the United States District Court for the Southern District of New York alleging that Continental's decision to deny him benefits violated the terms of his policy. The District Court had jurisdiction over the suit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* ERISA provides federal district courts with jurisdiction over disputes involving employee welfare benefit plans. *See id.* § 1132(e). Peterson's short and long-term disability plans constitute employee welfare plans which fall within ERISA. *See id.* § 1003.

After initial discovery, both parties moved for summary judgment. The District Court denied full summary judgment, but found that Continental improperly defined Peterson's regular occupation as the position created by CBS to accommodate Peterson's disability. The court determined that Peterson's regular occupation should have been defined as venue production manager—the position in which he served prior to the onset of his disability.

payable according to a sliding scale defined in the policy.

**3.** The Elimination Period is defined by the policy as "90 days or to the end of the Employer's Short Term Disability Plan, whichever is longer." The Occupation Period is twenty-four months.

Because Continental evaluated Peterson's claim against the wrong occupation, the District Court remanded the claim. In its remand order, the court stated:

I am thus remanding the claim back to the Claim Administrator, who should determine whether Peterson's medical condition—evaluated against the duties of his "regular occupation," rather than his temporary accommodation—entitled him to benefits under the Long Term Plan. Because the Plan sets forth a tripartite test, the Administrator should also evaluate whether Peterson was disabled from being "gainfully employed in any occupation for which [he was or became] qualified by education, training or experience."

*Peterson,* 77 F.Supp.2d at 429 (alteration in original).

Upon remand, Continental examined the job requirements of a venue production manager, evidence of Peterson's past job duties, and the medical evidence submitted by Peterson. After doing so, on April 7, 2000, it again denied Peterson's claim, finding that "the evidence submitted does not support a functional impairment or medical complications that would have prevented Mr. Peterson from working in his regular occupation beyond May 15, 1998, or that would compromise his ability to perform the substantial and material duties associated with his occupation as a Venue Production Manager." Peterson asked for reconsideration, but on June 23, 2000, Continental confirmed its earlier denial.

Peterson again appealed to the District Court, which on October 23, 2000, issued a Memorandum Decision and Order granting Peterson's motion for summary judgment. The District Court held that Continental's denial of short-term and occupation-period benefits was improper. Because Continental failed to consider relevant information proffered by Peterson and used improper standards in assessing Peterson's claims, Continental's determination was deemed arbitrary and capricious. The court further stated:

Despite a specific direction by this Court that it do so, CNA failed to address whether Peterson is "qualified by training, education and experience for any occupation" other than venue production manager, which is a requirement under the Plan after a claimant receives 24 months of [long-term-disability] benefits. CNA's failure to make a finding on this issue, when it was specifically directed to do so and when Plaintiff had submitted evidence addressing the issue, is manifestly unreasonable. This Court will therefore make the determination based on the record that was before CNA.

*Peterson,* 116 F.Supp.2d at 545–46.

After conducting an independent review of the record, the court then found that Peterson had demonstrated a "Total Disability" within the meaning of the permanent benefits section of his long-term disability plan, and was therefore entitled to permanent benefits. In a separate judgment dated December 18, 2000, the District Court rejected Continental's motion for reconsideration and awarded attorneys' fees and prejudgment interest to Peterson. The court awarded fees to Peterson for costs incurred during both Peterson's appeal within Continental's internal appeals process and during the litigation in the District Court. This timely appeal by Continental followed.

## DISCUSSION

On appeal, Continental does not challenge the District Court's finding that Peterson's regular occupation was a venue production manager. Nor does Continen-

tal contest the District Court's judgment that Continental improperly denied short-term and occupation-period benefits. Instead, Continental challenges only the District Court's decision regarding Peterson's eligibility for permanent benefits and its decision to award attorneys' fees. In addition, Peterson claims that he is entitled to be reimbursed for attorneys' fees and costs in regard to this appeal. We thus address only these issues.

## I. Eligibility for Permanent Benefits

It is well established that federal courts have a narrow role in reviewing the discretionary acts of ERISA plan administrators. *See, e.g., Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 443 (2d Cir.1995). ERISA empowers federal courts to review the decisions of plan administrators, but provides no authority for a court to render a *de novo* determination of an employee's eligibility for benefits. *See Miller v. United Welfare Fund,* 72 F.3d 1066, 1071 (2d Cir.1995) ("[N]othing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators . . . .") (internal quotation marks omitted); *Pagan,* 52 F.3d at 442 (stating that federal courts are "not free to substitute [their] judgment for that of the [plan administrator]"). Therefore, absent a determination by the plan administrator, federal courts are without jurisdiction to adjudicate whether an employee is eligible for benefits under an ERISA plan. *See Jones v. UNUM Life Ins. Co. of Am.,* 223 F.3d 130, 140–41 (2d Cir.2000).

Consistent with this narrow role for federal courts, all of our past decisions presuppose the existence of an eligibility or claim determination on the part of the plan administrator. *See id.; Miller,* 72 F.3d at 1070–71; *Pagan,* 52 F.3d at 442; *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan,* 698 F.2d 593, 599 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). Here, however, Continental made no determination as to whether Peterson was eligible for permanent benefits. Instead, in its April 7, 2000 determination, Continental rejected only Peterson's claim for short-term and occupation-period benefits, but did not address the permanent benefit aspect of the policy.

Peterson claims that the District Court's December 8, 1999, remand order directed Continental to render a determination on his eligibility for permanent benefits. However, the court's remand order was at best ambiguous. It referred specifically to the "tripartite test" used for occupation-period benefits and directed Continental to render a determination on the third element of that test. Thus, Continental was required to determine whether Peterson was employed during the occupation period in an occupation for which he was qualified. However, in its October 23, 2000 order, the court interpreted that directive as applying to the first part of the test for permanent benefits. Although similar in language, the test for permanent benefits differs from the test for occupation-period benefits. The permanent benefits test focuses on whether the employee is permanently unable to engage in any occupation for which the employee is qualified, rather than the claimant's current or regular occupation. Thus, the District Court never directed the administrator to undertake the relevant inquiry for an award of permanent benefits in its remand order. More fundamental, however, was the fact that Continental's decision was made in April 2000, several months before Peterson's occupation period ended. Because Peterson applied for long-term benefits to commence in August 1998, his twenty-four-month occupation period was not sched-

uled to end until August 2000. Peterson's policy states that permanent benefits will be payable if "[a]fter the Monthly Benefit has been payable for Your Occupation Period ... You are ... continuously unable to engage in any occupation. ..." The policy thus explicitly refers to a determination after the occupation period has closed. As Peterson's occupation period was not yet complete, his eligibility for permanent benefits was not an issue ripe for determination by the claim administrator.

Under such circumstances, we find that the District Court erred by adjudicating the question of Peterson's eligibility for permanent benefits. Absent a decision by the plan administrator, district courts have no jurisdiction to make an assessment of a beneficiary's eligibility for benefits. The instant case is controlled by our decision in *Jones*, where we faced a factually similar situation and found that the district court had no jurisdiction over an ERISA benefits question that had not yet ripened into a case or controversy. 223 F.3d at 140–41. In *Jones*, a plaintiff brought suit seeking long-term disability benefits under an ERISA qualified plan. The district court remanded the case to the plan administrator for a determination on the plaintiff's eligibility for benefits beyond the initial twenty-four-month period, but did not retain jurisdiction over the case while it was remanded. On appeal the plaintiff argued that the court should have retained jurisdiction, allowing her to collect prejudgment interest on amounts owed during the remand period. *See id.* at 140. We disagreed, holding that because the plan administrator had yet to make a determination in regard to post-twenty-four-month period benefits, there was not yet a case or controversy regarding that issue. *See id.* at 141. Since the plan had yet to decide whether the plaintiff deserved benefits for the post-twenty-four-month period, the plaintiff had not suffered an actual or threatened injury. *See id.* Article III of the Constitution provides jurisdiction to district courts only over those disputes in which the plaintiff can demonstrate " 'some actual or threatened injury as a result of the putatively illegal conduct of the defendant.' " *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 999, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). Until then, the issue has not ripened into a dispute capable of conferring jurisdiction on a district court.

Following *Jones*, we find that the District Court exceeded its jurisdiction when it rendered a determination as to Peterson's eligibility for permanent benefits. As of June 2000, when the District Court rendered its decision, Peterson had not yet been denied permanent benefits. In fact, because Peterson's occupation period had yet to expire, the issue was not even ripe for adjudication by the plan administrator, much less by the District Court. By issuing a decision on permanent benefits, the District Court determined a question over which it had no jurisdiction.

Accordingly, we vacate the judgment of the District Court insofar as that judgment relates to Peterson's eligibility for permanent benefits. Of course, Peterson is free to file a claim for permanent benefits with Continental. Should he receive an adverse decision after exhausting administrative remedies, he may file a suit in federal court in the normal course. Because of the lack of jurisdiction over the question of permanent benefits, neither this Court nor the District Court may retain jurisdiction over the suit while Peterson pursues his eligibility for permanent benefits with Continental.

## II. Attorneys' Fees and Costs

In an order issued December 18, 2000, the District Court awarded attorneys' fees reimbursing Peterson for the expenses he

incurred (1) during the administrative appeal of Continental's decision within Continental's internal appeals system; (2) during the litigation before the District Court; and (3) during the time the case was remanded back to Continental. Continental does not challenge the award of fees for Peterson's cost in litigating his claim in district court ((2) above), but contends that the court exceeded its authority when it awarded costs to Peterson for fees incurred during the administrative proceedings prior to filing suit and upon remand. In addition, Peterson claims that he is entitled to the costs of pursuing this appeal.

■■■ We begin with the general rule, known as the American rule, which requires that each party shoulder its own costs in litigation. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Courts may reallocate the burdens of litigation, however, when authorized or directed to do so by a statute. *See id.* at 269–71, 95 S.Ct. 1612. Here, the District Court awarded fees pursuant to the fee-shifting provision of ERISA, 29 U.S.C. § 1132(g)(1), which provides:

> **Attorney's fee and costs; awards in actions involving delinquent contributions.** (1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

The question presented by this appeal is whether this provision limits a district court to award costs incurred only in formal judicial actions under the jurisdiction of a district court, or whether the provision more broadly covers costs incurred during administrative proceedings related to the judicial action. We conclude that

§ 1132(g)(1) authorizes a district court to award fees incurred only after a district court has assumed jurisdiction over a case. Thus, fees incurred in administrative proceedings prior to filing suit in the district court are unavailable, but fees incurred during an administrative remand ordered by the district court and over which the court retains jurisdiction are authorized by the statute.

**A. Pre–Litigation Fees and Costs**

■■■ We first address the availability of an award for fees incurred during the initial administrative claims process. Section 1332(g)(1) authorizes a district court to award attorney's fees and costs incurred in "any action under this subchapter." Therefore, to determine the scope of 1332(g)(1), we must determine whether Congress intended the term "action" to be limited to judicial suits or to broadly cover administrative proceedings related to the judicial suit. Looking first to the text of 1132(g)(1), the statute's language supports an interpretation of the term "action" restricted to formal judicial proceedings. Used in a statute, the term "action" traditionally connotes a formal adversarial proceeding under the jurisdiction of a court of law. *See* BLACK'S LAW DICT. 28 (6th ed. 1990) (defining "action" as "[t]erm in its usual legal sense means a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law ... The legal and formal demand of one's right from another person or party made and insisted on in a court of justice.... It includes all the formal proceedings in a court of justice attendant upon the demand of a right made by one person of another in such court, including an adjudication upon the right and its enforcement or denial by the court.") (citation omitted); BALLENTINE'S LAW DICT. 18–19 (3d ed. 1969) (defining "action" as "[a] judicial proceeding, either in law or in equity, to obtain relief at the

hands of a court. A judicial remedy for the enforcement or protection of a right, or a legal proceeding in which a plaintiff claims against a defendant ..."); WEBSTER'S THIRD NEW INT'L DICT. 21 (1990) (defining "action" as "a deliberate or authorized proceeding ... a legal proceeding by which one demands or enforces one's right in a court of justice ... a judicial proceeding for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense ...").

The broader statutory scheme of ERISA also provides support for a construction of the fee-shifting provision limited to actions under the jurisdiction of a court of law. Section 1132(g)(1) authorizes fees in "any action under this subchapter." Thus, the use of the term "action" in subsection (g)(1) must be defined coterminously with the use of the term throughout the subchapter. Section 1132(e) grants exclusive jurisdiction to United States District Courts over "civil actions under this subchapter" that involve persons designated by a separate provision of ERISA. It moreover grants concurrent jurisdiction to federal and state courts over other types of "actions." Thus, by designating that only specific courts of law have jurisdiction over the actions described in § 1132(e), the subchapter strongly implies that the word "action" denotes formal proceedings under the jurisdiction of a court of law.[4]

Two Circuits have addressed whether pre-litigation fees and costs are authorized by ERISA, and both have concluded that they are not. First, in *Cann v. Carpenters' Pension Trust Fund,* 989 F.2d 313 (9th Cir.1993), the Ninth Circuit disallowed an award of fees incurred in administrative proceedings prior to a suit being filed in a district court, construing ERISA "as limiting the award to fees incurred in the litigation in court." *Id.* at 316. "The word 'action' generally designates only proceedings in court, not administrative proceedings even though necessary and valuable." *Id.* Similarly, the Sixth Circuit in *Anderson v. Procter & Gamble Co.,* 220 F.3d 449 (6th Cir.2000), held that a plaintiff who prevailed in securing benefits during administrative proceedings before her plan administrator could not recover fees for that proceeding. "Because Anderson is requesting attorneys' fees only for exhaustion of administrative remedies, and because she prevailed on her claims at the administrative stage and thus did not seek review in the courts," she could not prevail in her request for fees. *Id.* at 454. In both of these cases, the courts emphasized that neither the text nor the policies underlying ERISA support the award of pre-litigation costs. *Id.* at 454–56; *Cann,* 989 F.2d at 316–17; *see also McElwaine v. U.S. West, Inc.,* 176 F.3d 1167, 1172 n. 8 (9th Cir.1999) (noting that "[f]ees are not available for the administrative por-

---

4. While it is not necessary to turn to the legislative history of ERISA to define the reach of § 1132(g)(1), we note that the legislative history supports the conclusion that Congress intended the term "action" to refer to a suit brought in state or federal court. For example, a Report of the Committee on Finance of the United States Senate states that ERISA "provides that participants or beneficiaries may bring civil actions ... in any State or Federal court of competent jurisdiction." S. Rep. No. 1179 at 106 (1973). Further, the Joint Explanatory Statement of the Committee of Conference describes the courts that have jurisdiction over specific types of actions under ERISA and then states that "in any action ... the court may allow reasonable attorney's fees and costs." Legislative History of the Employee Retirement Income Security Act of 1974, Pub.L. No. 93–406 at 4594 (1976). By granting jurisdiction to specific courts over "actions" and then using the same term in regard to the fee-shifting provision, the drafters of ERISA intended "action" in § 1132(g)(1) to refer to judicial proceedings.

tion of an ERISA appeal" that preceded litigation in the district court); *Gustafson v. Kennametal, Inc.*, No. 00–CIV–7396, 2001 WL 25722, at *8 (S.D.N.Y. Jan. 10, 2001) ("[29 U.S.C. 1132(g)(1)] does not grant individuals the right to compensation for attorneys' fees incurred during the administrative portion of the claim process."); *Aminoff v. Ally & Gargano, Inc.*, 95–CIV–10535, 1996 WL 675789, at *4 (S.D.N.Y. Nov. 21, 1996) ("Under the plain language of [29 U.S.C. § 1132(g)(1)], plaintiffs cannot recover fees incurred in settling the dispute because no litigation was ever instituted.").

Although the Supreme Court has yet to address this question in the ERISA context, its cases interpreting other fee-shifting statutes support our conclusion. In *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 61, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), the Court found that Title VII of the Civil Rights Act of 1964 allows the recovery of costs incurred prior to suit being brought in a court of law. The Court noted that Title VII's fee-shifting statute authorizes fees for legal work in "any action or proceeding." 42 U.S.C. 1988(b). "Congress' use of the broadly inclusive disjunctive phrase 'action or proceeding' indicates an intent to subject the losing party to an award of attorney's fees and costs that includes expenses incurred for administrative proceedings." *N.Y. Gaslight Club*, 447 U.S. at 61, 100 S.Ct. 2024. Although not dispositive, we note that the text of ERISA contains no similar reference to "proceedings," providing strong evidence that Congress did not in-

tend ERISA to have as broad a reach as Title VII. *Compare id.* at 61, 100 S.Ct. 2024 *with Cann*, 989 F.2d at 317.

Peterson contends that the Supreme Court decisions in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), and *Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), support the award of pre-litigation fees and costs. Although it is true that in *Delaware Valley* the Court held that Congress's use of only the word "action" rather than "action or proceeding" was "not a sufficient indication that Congress intended [the fee-shifting provision] to apply only to judicial, and not administrative, proceedings," *Delaware Valley*, 478 U.S. at 559, 106 S.Ct. 3088, it is important to note in both *Delaware Valley* and *Hudson*, the Court authorized only the award of fees incurred during an administrative proceeding that occurred *after* a court of law assumed jurisdiction over the case. *See id.* at 558, 106 S.Ct. 3088; 490 U.S. at 879, 109 S.Ct. 2248. Thus, neither case supports the proposition that ERISA should be interpreted as providing for pre-litigation fees and costs.

In sum, both the text of § 1132(g)(1) and cases interpreting that provision lead to the conclusion that ERISA authorizes the award only for fees incurred in relation to a suit filed in a court of competent jurisdiction. Therefore, Peterson may not collect fees incurred during the initial administrative process.[5]

---

**5.** Of course, Peterson is entitled to collect a reasonable amount for fees and costs incurred in *initiating* suit in the District Court. For example, time spent drafting the complaint is properly considered part of the litigation in a district court, even though it occurs prior to filing. We leave the precise amount of fees and costs due to Peterson under this excep-

tion to the District Court on remand. We note, however, that awards for pre-filing fees should be carefully reviewed so that they do not swallow the general rule that the decisive event triggering eligibility for fee awards pursuant to § 1132(g)(1) is the filing of a complaint in a court of competent jurisdiction.

## B. Fees and Costs Incurred During Court–Ordered Remand

■ In contrast to pre-litigation costs, we see no reason that a party may not recover costs incurred during an administrative remand ordered by a court. As demonstrated above, the text and legislative history indicate that once a court of law has assumed jurisdiction over a suit, all costs incurred may be shifted by a court to one party. The fact that a court orders additional fact finding or proceedings to occur at the administrative level does not alter the fact that those proceedings are part of the "action" as defined by ERISA. Where the administrative proceedings are ordered by the district court and where that court retains jurisdiction over the action during the pendency of the administrative proceedings, we hold that ERISA authorizes the award of associated costs.

While we are not aware of any other court to adjudicate the precise issue of fees incurred during an administrative remand in the ERISA context, cases interpreting other fee-shifting statutes support our conclusions. For example, in *Hudson*, the Supreme Court held that the Equal Access to Justice Act ("EAJA") authorized a court to award fees incurred during an administrative remand. 490 U.S. at 892, 109 S.Ct. 2248. As described by the Court itself, "*Hudson* thus stands for the proposition that in those cases where the district court retains jurisdiction of the civil action and contemplates entering a final judgment following the completion of administrative proceedings, a claimant may collect EAJA fees for work done at the administrative level." *Melkonyan v. Sullivan*, 501 U.S. 89, 97, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). Similarly, in *Delaware Valley*, the Court affirmed the award of fees and costs that were incurred during administrative proceedings conducted pursuant to a court-approved settlement plan. 478 U.S. at 561, 106 S.Ct. 3088; *see also Johnson v. United States*, 554 F.2d 632, 633 (4th Cir. 1977) ("We conclude that the district court properly took into consideration the attorney's services in the agency proceeding. In a sense, this remanded administrative proceeding was ancillary to [the plaintiff's] initial action in the district court.").

■ Accordingly, we hold that the District Court appropriately exercised its discretion to award Peterson fees and costs incurred while engaged in the administrative proceedings ordered by the District Court.

## C. Fees and Costs Incurred in this Appeal

■ Peterson requests that this Court award him attorneys' fees that he incurred in connection with the present appeal. ERISA clearly permits the award of such fees, *see Ford v. N.Y. Cent. Teamsters Pension Fund*, 642 F.2d 664, 665 (2d Cir.1981), however, as with any award under § 1132(g)(1), such an award is discretionary. *See* 29 U.S.C. § 1132(g)(1). Given that Continental, at least in regard to this appeal, acted in good faith by appealing only a small number of discrete issues, and has largely prevailed on those issues, we choose not to reallocate the costs of this appeal. *See Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir.1987); *Bratcher v. Bray–Doyle Ind. School Dist.*, 8 F.3d 722, 726 (10th Cir.1993) (denying appellate fees to party who was awarded fees for district court proceedings but who lost on appeal); *Misic v. Bldg. Serv. Employees Health & Welfare Trust*, 789 F.2d 1374, 1379 (9th Cir.1986) (denying appellate fees because appellants acted in good faith and raised meritorious issues). Therefore, we hold that each party shall bear its own fees and costs in regard to this appeal.

## CONCLUSION

We hold that because the plan administrator had yet to render a determination on the issue of Peterson's eligibility for permanent benefits, the District Court exceeded its jurisdiction when it rendered a determination as to that issue. We therefore vacate that part of the District Court's order addressing the issue of permanent benefits and dismiss the claim for lack of jurisdiction. Additionally, we vacate the award to Peterson of attorneys' fees and costs incurred during the administrative proceedings prior to filing suit in the District Court. We affirm the judgment of the District Court as to its award of fees and costs during all other time periods, but deny Peterson's request for fees and costs in regard to the instant appeal. We thus remand the case back to the District Court so that it may recalculate the amount of fees and costs available to Peterson consistent with this opinion.