Mark WINKLER, Plaintiff–Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant–Appellee.

No. 05–2447–cv.

United States Court of Appeals,
Second Circuit.

March 1, 2006.

Scott M. Riemer (Steven S. Deibert), Riemer & Associates LLC, New York, NY, for Plaintiff-Appellant, of counsel.

Allan M. Marcus, Lester, Schwab, Katz & Dwyer, LLP, New York, NY, for Defendant-Appellee.

PRESENT: Hon. DENNIS JACOBS, Hon. CHESTER J. STRAUB, and Hon. ROSEMARY S. POOLER, Circuit Judges.

## SUMMARY ORDER

Appellant Mark Winkler ("Winkler") appeals from a District Court judgment (Shira A. Scheindlin, *Judge*) granting appellee Metropolitan Life Insurance Co. ("MetLife") summary judgment with respect to MetLife's determination that Winkler did not qualify as disabled under his MetLife employee benefits plan ("Plan"). We assume the parties' familiarity with the facts, decision below, and issues on appeal.

The parties disagree about the proper standard by which MetLife's determination should be reviewed, which turns on

whether the Plan effectively confers discretion on MetLife. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (holding that "arbitrary and capricious" standard applies where plan expressly confers discretionary authority on administrator). We assume arguendo that the more deferential "arbitrary and capricious" standard applies because we find that MetLife's determination fails even this deferential review.

The following factors, combined, prompt our decision. (We need not reach the issue of whether any factor, on its own, would warrant vacatur.) First, MetLife failed to weigh the evidence in concluding that Winkler was terminated by his employer, Jack Morton Co. ("Company"), for reasons unrelated to his disability (a combination of depression, other psychiatric conditions, and HIV medication side effects). MetLife relied on a cursory statement by the Company's Human Resources department that Winkler's performance was "satisfactory," while dismissing as mere "lay opinions" detailed statements by several of Winkler's former colleagues, including superiors, that, in the final few months before his termination, they personally observed Winkler's job performance (and overall functionality) deteriorating precipitously to the point where he was barely surviving on the good-will he had built up over his time at the Company. An administrator may, in exercising its discretion, weigh competing evidence, but it may not, as MetLife did here, cherry-pick the evidence it prefers while ignoring significant evidence to the contrary. MetLife's conclusion that Winkler's job performance remained adequate until his termination, moreover, was central to MetLife's final decisions, as its independent consultants relied on it to question the judgment of Winkler's treatment providers that he was disabled.

Second, MetLife's final denial relied (as had its consultants) on the absence of any objective cognitive testing, notwithstanding that MetLife never raised this issue with Winkler during the various stages of his application and appeal and that Winker did supply cognitive testing by Drs. Drob and Almeleh, albeit evidently not of the sort desired by MetLife.

Third, MetLife dismissed statements by Winkler's treatment providers simply because they were made soon-after, as opposed to before, his termination and because these providers did not contemporaneously document his employment disability before termination. In expressing doubt that Winkler could have functioned for so long with the chronic disabilities identified by Dr. Drob, MetLife's consultants ignored Dr. Drob's observation that, in the few months before Winkler was terminated, he "decompensat[ed]" as a result of various concurrent events: the progression of his HIV, the worsened side effects of his HIV medications, his brother's diagnosis with a terminal cancer, and the break-up of a long-term romantic relationship.

Fourth, MetLife based its decision entirely on the opinions of three independent consultants who never personally examined Winkler, while discounting the opinions of Winkler's three treatment providers and one independent examiner. While administrators may credit their own *reliable* evidence over the statements of treatment providers, *see Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003), MetLife's exclusive reliance on second-hand opinions adds to the overall picture of its decision as less than fair. First-hand observation is especially important in the context of assessing psychiatric disabilities. *See, e.g., Sheehan v. Metropolitan Life*

*Ins. Co.*, 368 F.Supp.2d 228, 255 (S.D.N.Y. 2005).

For the foregoing reasons, we hereby **VACATE** the judgment of the District Court, and **REMAND** to the District Court with instructions to remand the case to MetLife for further proceedings consistent with this order.