James C. SHEEHAN, Plaintiff,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

No. 01 Civ. 9182(CSH).

United States District Court,
S.D. New York.

Sept. 12, 2006.

Thomas Julian Fellig, Fellig, Feingold, Edelblum & Schwartz, LLC, Hackensack, NJ, for Plaintiff.

Carl J. Schaerf, Lester, Schwab, Katz and Dwyer LLP, New York, NY, for Defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

Plaintiff James C. Sheehan moves for an order awarding him attorney's fees in this ERISA action. Sheehan is represented in the motion by the Staten Island-based law firm of Sgarlato & Sgarlato ("the Sgarlato Firm"). The Sgarlato Firm represented Sheehan during the bench trial conducted by this Court. Sheehan retained different counsel to represent him in an appeal to the Second Circuit.

## I. BACKGROUND

At trial, Sheehan contended that Defendant Metropolitan Life Insurance Company ("MetLife") wrongfully terminated his

benefits under a long-term disability benefits policy issued by MetLife to Sheehan's former employer. Sheehan claimed past benefits from the date of the termination to the date of trial, and future benefits from that date to the time when his eligibility terminated under the express terms of the policy. Sheehan contended that he was totally disabled as that term was defined by the policy at the time MetLife terminated his benefits, and was in that condition at the time of trial and would remain so in the future. MetLife contended that its termination of Sheehan's benefits was proper under the policy and that it owed Sheehan nothing.

Following trial, this Court entered an opinion reported at 368 F.Supp.2d 228 (S.D.N.Y.2005). I held that MetLife's termination of Sheehan's benefits was wrongful; that Sheehan was entitled to part of the past benefits he sought but not all of them; and that he was not entitled to any future benefits. My reasoning is set forth in the cited opinion, familiarity with which is assumed, and need not be repeated on this application for attorney's fees. Judgment was entered in Sheehan's favor in the amount of $218,235.24.

Sheehan and MetLife filed cross-appeals. The Second Circuit rejected both in a summary order filed on April 14, 2006 (Nos.05–2647–cv, 05–2892–cv), and affirmed the judgment entered by this Court.

In response to Sheehan's present motion for attorney's fees, MetLife contends that he is not entitled to an award or, in the alternative, that the amount sought is unreasonable, and must in any event be substantially discounted to reflect the partial failure of Sheehan's claims.

## II. DISCUSSION

### A. Introduction

The ERISA statute provides that in any action brought pursuant to its provisions "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Invoking that section, Sheehan moves for an allowance of attorney's fees in the amount of $140,306.25.

The Sgarlato Firm supported the application with a written statement of the hours devoted by Firm attorneys to the case from its inception through the entry of judgment in this Court. In a Memorandum Opinion and Order dated August 23, 2006, I questioned whether the document submitted satisfied the requirement of *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir.1983), that a party seeking a court order awarding attorney's fees must support the application by "contemporaneous" time records. However, the supplemental affidavit of Richard J. Sgarlato, Esq., verified August 25, 2006, satisfies me that this requirement has been met. I turn, then, to the merits of Sheehan's application.

### B. Sheehan's Entitlement to Attorney's Fees

Sheehan must make the threshold showing that he is the *prevailing* party in the litigation. Fee-shifting provisions in other federal statutes explicitly limit the award of an attorney's fee to a "prevailing" party. The attorney's fee provision of ERISA, 29 U.S.C. § 1132(g)(1), does not include that adjective. But the law of this Circuit makes it plain that an ERISA plaintiff must prevail in his action in order to recover attorney's fees. *See, e.g., Birmingham v. SoGen–Swiss Int'l Corp. Ret. Plan*, 718 F.2d 515, 523 (2d Cir.1983) ("attorney's fees may be awarded to the prevailing party under ERISA in the absence of some particular justification for not doing so"); *Cefali v. Buffalo Brass Co., Inc.*,

748 F.Supp. 1011, 1017 (W.D.N.Y.1990) ("Although the ERISA fee-shifting statute does not expressly limit fee awards to the prevailing party, case law has established that it is significant whether the fee applicant has prevailed." (citing *Birmingham* )). Other considerations apply. In *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir.1987), the Second Circuit said of a district court's discretion to award attorney's fees under ERISA: "Ordinarily, the decision is based on five factors: (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants." However, among these several considerations, the requirement that a party prevail to some discernible and material degree is clearly *primus inter pares*. I know of no case under any of the federal fee-shifting statutes in which a plaintiff whose action failed entirely was awarded attorney's fees. Such an award would offend both the statute and common sense.

█ It is equally clear that a party plaintiff need not recover all the relief he seeks in order to qualify as a prevailing party for purposes of a fee-shifting statute. Plaintiffs may be considered prevailing parties "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)

(citation and internal quotation marks omitted) (construing fee-shifting statute in 42 U.S.C. § 1988). This means that plaintiffs must at least "demonstrate a change in the legal relationship" between them and defendants as a result of the lawsuit. *Koster v. Perales*, 903 F.2d 131, 134 (2d Cir.1990). In other words, there must exist "a causal connection between the relief obtained and the litigation in which fees are sought." *Gerena–Valentin v. Koch*, 739 F.2d 755, 758 (2d Cir.1984).

█ In the case at bar, Sheehan was undisputably a "prevailing" party for purposes of fee-shifting under § 1132(g)(1). The "legal relationship" existing between Sheehan and MetLife at the beginning of the trial was fashioned by Sheehan's claims that MetLife wrongfully terminated his benefits and owed him additional sums, and MetLife's claims that the termination was proper and it owed Sheehan nothing. This Court held after trial that MetLife improperly terminated Sheehan's benefits on March 31, 2001 and owed Sheehan benefits from that date to June 12, 2003. The change in the parties' legal relationship is evidenced by the fact that the Court entered a judgment in Sheehan's favor and MetLife had to write a check in excess of $200,000 to pay it. While I rejected Sheehan's claims for benefits from June 13, 2003 to the date of trial and a declaration of entitlement to future benefits, under the case law Sheehan's partial success in the action qualifies him as a prevailing party for fee-shifting purposes.[1]

█ The other factors collected in *Chambless*, viewed separately or together,

---

1. It is appropriate to note in this context that Sheehan did more than prevail on part of his claim for unpaid benefits. He also prevailed in a dispute on whether pre-judgment interest should be calculated at the rate of 9% (Sheehan's contention) or 2.5% (MetLife's conten-

tion). *See* 2005 WL 1020874 (S.D.N.Y. Apr.29, 2005). This Court's decision in Sheehan's favor on that issue significantly increased the amount of the judgment subsequently entered.

do not militate against an award of attorney's fees to Sheehan. MetLife's ability to pay an award is not in question. MetLife contends that "this Court did not find that MetLife acted in bad faith in adjudicating Sheehan's claim; nor did it find that MetLife denied Sheehan a full and fair review or violated ERISA in any way." Brief at 4. That is something of a stretch. I found that MetLife erroneously concluded Sheehan was not disabled when it terminated his benefits. Central to that finding was MetLife's reliance upon the opinions of a cardiologist and a psychiatrist who had never treated or observed Sheehan, while rejecting the contrary opinions of Sheehan's two treating physicians. In similar circumstances the Second Circuit was moved to say, "MetLife's exclusive reliance on second-hand opinions adds to the overall picture of its decision as less than fair," *Winkler v. Metro. Life Ins. Co.,* 170 Fed. Appx. 167, 168–69 (2d Cir.2006), citing this Court's opinion in *Sheehan* as authority for that proposition.[2] Such expressions of judicial disapproval might—one can put it no higher than that—dissuade MetLife from continuing such practices, to the benefit of future individuals whose disability benefits were terminated. But this discussion need not be extended. As previously noted, the law in this Circuit is that "attorney's fees may be awarded to the prevailing party under ERISA in the absence of some particular justification for not doing so." *Birmingham,* 718 F.2d at 523. No such justification may be discerned in the case at bar.

### C. Whether the Requested Fee Is Reasonable: the Lodestar Calculation

▇▇▇▇ The conclusion that Sheehan is a prevailing party "brings him to the threshold, entitling him to fees, but it remains for the Court to determine what fee is reasonable." *Conners v. Connecticut Gen. Life Ins. Co.,* No. 98 Civ. 8522, 2003 WL 1888726, at *1 (S.D.N.Y. Apr.15, 2003) (citing *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933). The Second Circuit has adopted the lodestar method for determining reasonable fees. "Under this approach, a baseline fee award is determined by the number of hours reasonably expended, multiplied by a reasonable hourly rate for attorneys and paralegals." *Id.* (citations omitted). The burden of establishing a reasonable rate is on the fee applicant. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933; *Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1059 (2d Cir.1989). "In general, the rate should be calculated according to the prevailing rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. Thus, more than one market rate may prevail in a given area, particularly in urban locations with diverse legal communities." *Cefali,* 748 F.Supp. at 1018 (citations and internal quotation marks omitted).

▇▇▇▇ The trial court's determination of a reasonable hourly rate, applied to the time reasonably spent on the case, results in the lodestar figure. "The lodestar figure may be adjusted upward or downward, however, there is a strong presumption that the lodestar figure represents a 'reasonable' fee." *United States Football League v. Nat'l Football League,* 887 F.2d 408, 413 (2d Cir.1989) (citations and internal quotation marks omitted); *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir.1999) (same). "[A] party advocating

---

**2.** I recognize that *Winkler* was a summary order and the Second Circuit's rules restrict the purposes for which it may be cited. However, I quote *Winkler* not as precedent but for the different purpose of demonstrating that the Court of Appeals read this Court's opinion in *Sheehan* as I intended it to be read.

the reduction of the lodestar amount bears the burden of establishing that a reduction is justified." *United States Football League*, 887 F.2d at 413 (citation omitted).

In the case at bar, Sheehan claims a lodestar attorney's fee of $140,306.25. The principal support for that fee is the affidavit of Richard J. Sgarlato, the senior partner of the Sgarlato Firm, verified May 16, 2006 ("the May 16 affidavit"), and attached time records. The claim is comprised of 182.25 hours of two partners' time, billed at an hourly rate of $425 for a subtotal of $77,456.25; 176.25 hours of three associates' time, billed at an hourly rate of $350 for a subtotal of $61,687.50; and 7.75 hours of paralegals' or employees' time, billed at an hourly rate of $150, for a subtotal of $1,162.50.

The support found in the May 16 affidavit for the reasonableness of the claimed hourly rates is sketchy. Richard Sgarlato says in ¶ 16 of that affidavit that the claimed hourly rates "are the standard rates charged by Your Affirmant's firm for services of this type and are justified based on the knowledge and experience of said attorneys." But the May 16 affidavit's detailed description of the Firm attorneys' "knowledge and experience" is limited to Richard Sgarlato, who says that he has been an attorney for 35 years, was admitted to practice in the state courts in 1969 and to this Court in 1971, and "has an abundance of trial experience, representing clients in both State and Federal Court proceedings, including complex litigation such as ERISA matters." May 16 affidavit at ¶ 15. Time spent on the case by the other partner, Gina M. Sgarlato, and by three named associates is also claimed, but there is no detailed description of their experience at the bar in general or on ERISA cases in particular. The May 16 affidavit says only that "[i]n total, the above named attorneys have a combined legal experience in excess of sixty (60) years." *Id.* Since 35 years of that combined experience are attributable to Richard Sgarlato, 25 years are attributable to the other partner and the three associates combined. The experience of the attorneys involved is a relevant consideration under the cited cases, particularly since Gina Sgarlato's time is billed at the same $425 hourly rate as Richard Sgarlato, and each of the three associates' time is billed at $350 an hour, only $75 less than the charge for Richard Sgarlato. If I remember correctly, it emerged at the trial that Gina Sgarlato is the daughter of Richard Sgarlato. If that is so, her legal experience must be less than that of her father, who attests that he has been a practicing attorney for 35 years. As for the associates, *quaere* whether the $350 hourly rate is reasonable for an associate just graduated from law school. I do not know if so recent a graduate was involved in the case because the May 16 affidavit does not tell me.

MetLife argues that the claimed hourly rates are unreasonably high, principally because "plaintiff's counsel were not experienced ERISA attorneys." Brief at 6. Richard Sgarlato, in a reply affidavit dated June 21, 2006, avers that during his 36-year career at the bar he has tried "hundreds of cases" and "has also handled numerous ERISA based claims." Reply affidavit at ¶ 8. While Sgarlato acknowledges that "this case was in fact the first time Your Affiant's firm was involved in the actual trial of an ERISA case, this does not take into account the numerous ERISA cases handled by your Affiant's firm that were settled prior to trial." *Id.*

In my view, the manner in which Richard Sgarlato conducted the trial of this case before this Court is at least as important as the extent of his prior experience in ERISA cases. Although the time rec-

ords show that others in the firm assisted in research and preparation, Mr. Sgarlato tried the case alone in the courtroom. The case for Sheehan was well prepared and well presented. Mr. Sgarlato's decades of experience as a trial lawyer were revealed by his effective examination and cross-examination, contentions on disputed points of evidence (he won some and lost some), his opening statement and his closing argument. This was an effective and thoroughly professional performance. The same may be said—indeed, I say it—with respect to the conduct of the trial by counsel for MetLife, who presumably regard themselves as experienced ERISA lawyers (although they do not say what hourly rates they charged their client).

I find that an hourly charge of $425 for as experienced and effective a trial attorney as Richard Sgarlato is reasonable for lodestar purposes. There is no question that equally experienced attorneys in Wall Street firms charged substantially more during the relevant years (2001–2005), a differential illustrative of Judge Larimer's observation in *Cefali*, 748 F.Supp. at 1018, that "more than one market rate may prevail in a given area, particularly in urban areas with diverse legal communities."

However, the reasonableness of Richard Sgarlato's $425 hourly rate also demonstrates the inherent unreasonableness of the hourly rates claimed for Gina Sgarlato ($425) and the Sgarlato Firm associates ($350). In calculating the prevailing rates in a legal community for lodestar purposes, the Second Circuit lays particular stress upon "similar services by lawyers of reasonably comparable skill, experience and reputation." *Chambless*, 885 F.2d at 1058–59. If, as I believe, Gina Sgarlato is the daughter of Richard Sgarlato, it is difficult to conclude that her skill, experience and reputation are comparable to those of her law partner and father.[3] Richard Sgarlato's affidavit in support of the fee application gives no details with respect to the professional background of Gina Sgarlato. In these circumstances, I allow an hourly rate of $375 for Gina Sgarlato's time, a $50 reduction from the claimed rate. As for the three named associates, in the absence of any proof of their experience, I allow an hourly rate of $300, a $50 reduction. I will not disturb the claimed $150 hourly rate for paralegals and employees.

The next step in the lodestar analysis is to determine whether the time for which a fee is claimed was reasonably expended upon the case. MetLife makes some minor quibbles about the necessity of charges incurred during the trial preparation and process which lack substance. However, MetLife also contends that the fee cannot include any time spent by Sheehan's attorneys in an administrative review of MetLife's termination of benefits, before filing of the complaint in this Court. I agree. The law in this circuit is that attorney's fees for services in administrative proceedings prior to filing suit are not compensable under the ERISA fee-shifting provision. *See, e.g., Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 119 (2d Cir.2002) ("We conclude that § 1132(g)(1) authorizes a district court to award fees incurred only after a district court has assumed jurisdic-

**3.** It is not my purpose to denigrate the heart-warming decision of a child to follow a parent into the practice of law; I would be the last person to do so. But I am confident that when I, a 1955 graduate of law school, was an associate and then a junior partner at the admiralty law firm then bearing the family name where my father, a 1929 law school graduate, was a senior partner, the clients were billed more for his time than for mine; and so they should have been.

tion over a case."). Applying that rule to the case at bar, the Sgarlato Firm's time entries and charges for the period April 30 through June 22, 2001 must be eliminated. That disallowed period embraces 11 hours of Richard Sgarlato's time, 1.75 hours of Gina Sgarlato's time, and 2 hours of paralegals' time.

In consequence, the lodestar figure in this case is calculated as follows:

(a) Richard Sgarlato:

132.75 hours claimed less 11 hours = 121.75 hours × $425 = $51,743.75

(b) Gina Sgarlato:

49.5 hours claimed less 1.75 hours = 47.75 hours × $375 = $17,906.25

(c) Associates:

176.25 hours claimed × $300 = $52,875.00

(d) Paralegals:

7.75 hours claimed less 2 hours = 5.75 hours × $150 = $ 862.50

These amounts total $123,387.50. That is the lodestar figure the Court has calculated for this case.[4]

## D. Whether the Lodestar Figure Should Be Adjusted

It remains to consider whether this lodestar figure should be adjusted upward or downward. Sheehan does not contend that there should be an upward adjustment. MetLife contends that the lodestar figure should be adjusted downward to reflect the fact that Sheehan achieved at trial only a partial success on his claims. I agree.

In *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court held that where "a plaintiff has achieved only partial or limited success," full compensation for attorney's fees may not be reasonable. In that circumstance, "[t]he district court may either 'attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.'" *United States Football League*, 887 F.2d at 414 (citing and quoting *Hensley*, 461 U.S. at 436–37, 103 S.Ct. 1933).

While *Hensley* involved an award of attorney's fees under the civil rights statute, 42 U.S.C. § 1988, its holding that partial success in litigation may lead to a downward adjustment in the lodestar figure is applied to other federal fee-shifting statutes, including ERISA, as courts in this Circuit have consistently held. *See, e.g., Conners*, 2003 WL 1888726, at *2 (in ERISA action, "the second step of the *Hensley* analysis is to determine whether the Plaintiff's level of success warrants a fee reduction"); *Cefali*, 748 F.Supp. at 1018–19 (in ERISA action, "[t]he second question is whether the plaintiff achieved a high enough level of success that he should recover all of the fees requested even though he did not prevail on every contention raised in the lawsuit" (citing *Hensley*)); *Trs. of Bricklayers and Allied Craftworkers Local 5 New York Ret., Welfare and Training Funds v. Helmer-Cro-*

4. In arriving at this calculation of a reasonable attorney's fee, I disregard entirely MetLife's references in its brief at 7 n.6 to unsuccessful settlement negotiations and the amount of fees that might have been included in the settlement package. Settlement offers and discussions are generally inadmissible in subsequent litigation if no binding settlement is consummated.

*nin Constr., Inc.*, No. 03 Civ. 0748, 2005 WL 3789085, at *4 (S.D.N.Y. Oct. 24, 2005) ("In ERISA cases, to determine what is a reasonable fee, courts turn to the framework set forth in *Hensley v. Eckerhart* . . . . [T]he court may make an upward or downward adjustment to the fee by considering other factors, including the amount involved and the results obtained.").

Judge Martin's opinion in *Conners* is instructive in the case at bar because both cases involved ERISA claims against insurance companies under a long-term disability insurance policy. In *Conners*, after a remand to the District Court by the Second Circuit, the parties settled the case on terms which entitled the plaintiff as a "prevailing party" to claim an award of attorney's fees under § 1132(g)(1). The defendant insurer argued that the fee should be reduced in the litigation because plaintiff had failed on a claim that the insurer deducted workers' compensation benefits from plaintiff's monthly disability payments. Judge Martin awarded the full lodestar-calculated fee. He reasoned:

> Plaintiff attained a significant victory through this litigation. He was denied disability benefits under his insurance policy and as a result of the settlement reached in this litigation he has been reinstated under the policy and will receive monthly disability payments for as long as he is disabled or until he is 65, more than 20 years from now. Because Plaintiff succeeded in his attempt to receive past and future disability payments, his loss with respect to the claim for recovering deducted worker's compensation was not significant enough to justify a downward adjustment to the fee award.

2003 WL 1888726, at *2.

■ In the case at bar, and in rather stark contrast to *Conners*, Sheehan received only a part of the claimed past disability payments, and his claim for future payments was rejected entirely. Those are losses sufficient in amount to require a downward adjustment of his attorney's fees.

The remaining question is the amount of that adjustment. While the figures do not appear in the present motion papers, it would appear that Sheehan received a judgment for less than half of the amount he would have received if he had succeeded on all his claims. But it would not be fair to base a downward adjustment solely on that mathematical calculation. MetLife adamantly insisted that Sheehan was not disabled when it terminated his benefits and that it owed him nothing. Accordingly, to recover anything, Sheehan had to persuade the Court that he was disabled at the time of termination. This was the core issue on liability. Sheehan prevailed on that issue by a persuasive presentation of fact and medical expert opinion evidence, for which his attorneys should be adequately compensated. That was the necessary first battle in Sheehan's legal war against MetLife, and having lost it, MetLife wound up paying Sheehan more that $200,000. Sheehan's failure to succeed on all his claims and recover a greater amount warrants a downward adjustment of his attorney's fees by 30 percent, but no more than that.

## III. CONCLUSION

For the foregoing reasons, and in the exercise of my discretion, I award to Plaintiff attorney's fees in the amount of $86,371.25, that being 70 percent of the lodestar figure of $123,387.50, to be paid

by Defendant.[5]

It is SO ORDERED.

---

5. While the point is not raised in the motion papers, I note my agreement with Judge Martin in *Conners*, when he said: "Plaintiff's attorneys are being compensated for this case through a contingency-fee agreement reached with their client. Accordingly, the statutory fee must be used to offset fees owing under the contractual contingency fee to ensure that Plaintiff's attorneys are not doubly compensated for their work." 2003 WL 1888726, at *2. If Sheehan and the Sgarlato Firm entered into a contingency-fee agreement, that principle applies to them.