**S.A. McELWAINE, an unmarried person, on behalf of herself and all others similarly situated, Plaintiff–Appellant,**

v.

**US WEST, INC., a foreign corporation, Defendant–Appellee.**

Nos. 97–16306, 98–15732.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1998.

Decided May 10, 1999.

Robert P. Geller, Bradford T. Yaker, Hertz, Schram & Saretsky, Bloomfield Hills, Michigan, for the plaintiff-appellant.

James J. Trimble, Fennemore Craig, Tucson, Arizona, and Elizabeth Anne Kushibab, US West, Inc., for the defendant-appellee.

Before: BRIGHT,[1] FLETCHER, and THOMPSON, Circuit Judges.

PER CURIAM:

S.A. McElwaine ("McElwaine") pursued a claim against US West, Inc. ("US West"), her former employer, to recover

pension benefits that she believed US West owed her and other early retirees as a result of US West's error in calculating the present value of the lump sum benefits it had paid to early retirees. US West admitted its calculation error, but offered McElwaine no firm commitment to remedy the shortfall. McElwaine filed suit one month before the statute of limitations ran.

Unbeknownst to McElwaine, by the time she filed her suit, US West had initiated formal steps to correct its error. Five months after McElwaine filed suit, US West made a commitment to pay approximately $20 million owed to approximately 3,000 beneficiaries. McElwaine continued to pursue the litigation until her case was dismissed almost a year later.

McElwaine now seeks attorney fees under the civil enforcement provisions of the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1132(g)(1). The district court denied fees because it concluded that McElwaine's lawsuit generated no additional benefits to any of the plan beneficiaries. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we reverse. After considering McElwaine's appeal and US West's persistent unwillingness to divulge its plans to resolve McElwaine's claim, we conclude that McElwaine is entitled to a reasonable attorney fee for a portion of her efforts.

## FACTUAL and PROCEDURAL BACKGROUND

McElwaine took early retirement from US West in 1990. She received $216,219 in a lump sum retirement distribution as part of the company's early retirement program, an employee pension plan under ERISA. 29 U.S.C. § 1002. The lump sum distribution included her pension benefit, supplemental early retirement compensation, and a death benefit.

---

1. The Honorable Myron H. Bright, Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

Five years later, McElwaine discovered that US West had calculated the present value of the early retirees' death benefit erroneously.[2] Because the pension plan ("Plan") paid death benefits only if a qualified death beneficiary was alive at the participant's death, US West had used a probability factor to estimate the likelihood of paying a death benefit. According to McElwaine, the Plan did not allow US West to use a probability factor. Instead, McElwaine asserted, the Plan required that the present value of the death benefits be calculated assuming a 100 percent probability that a death benefit would be paid. The probability factor reduced the likelihood that a death benefit would actually be paid, and therefore, reduced substantially the amount of death benefits paid to these early retirees.

In March 1995, McElwaine alerted US West to the error and pursued administrative remedies to force US West to (1) recalculate the death benefits portion using a 100 percent probability factor and (2) pay the additional amounts owed to her and all similarly situated plan participants. US West initially denied her claim and McElwaine appealed to US West's Employee Benefits Committee ("EBC") in September 1995. On January 22, 1996, the EBC acknowledged its error and informed McElwaine that, pursuant to her appeal, it was seeking IRS approval of a proposal to correct the deficient calculation.[3] Although the EBC promised to inform McElwaine when the IRS responded, US West did not divulge the details of its proposal, nor did it indicate when it would submit its proposal to the IRS or how it would resolve the issue in the event that the IRS disapproved of its proposed recalculation.

■ McElwaine tried repeatedly to determine whether US West had submitted its proposal to the IRS, but her efforts were fruitless. In February 1996, US West informed her that it had not yet submitted any proposal to the IRS and that it would be uncomfortable sharing any material that it ultimately submitted. The statute of limitations on McElwaine's claim ran in May 1996.[4] McElwaine retained counsel in March 1996, and filed a complaint in district court on April 4, 1996. McElwaine's complaint paralleled the allegations in her administrative claim regarding US West's unlawful use of an unspecified probability factor to compute the present value of death benefits available under the early retirement program .[5]

US West submitted a formal proposal to the IRS on March 15, 1996, explaining its error and resulting deficiency as well as its proposed plan to recalculate the death benefits and make up the shortfall to the beneficiaries. It estimated that its error had shortchanged 2,879 retirees and would require a supplemental payment of $15 million. US West later revised the payment amount, which included eight percent interest per year, to $20 million. US West did not inform McElwaine that it had submitted a proposal to the IRS.

In May 1996, US West agreed to show McElwaine its IRS submission if she signed a confidentiality agreement before viewing the IRS filing. US West assured McElwaine that once she viewed the IRS submission, she would realize that US

---

**2.** The record does not reveal how McElwaine discovered the error.

**3.** Under the IRS' Voluntary Compliance Resolution program, a company pension plan may avoid losing its tax-exempt status as a result of calculation errors if the company voluntarily agrees to correct the errors. The IRS must issue a Compliance Statement before the Plan pays supplemental benefits. *See* Rev.Proc. 94–62, 1994–2 C.B. 778.

**4.** The statute of limitations for an ERISA benefits action is based on the applicable statute of limitations for a contract claim in the forum state. *See e.g., Flanagan v. Inland Empire Electrical Workers Pension Plan & Trust,* 3 F.3d 1246, 1252 (9th Cir.1993). Arizona, the forum state, has a six year statute of limitations.

**5.** Although McElwaine filed her complaint as a class action, she did not attempt to certify the class until September 1996.

West intended to fully satisfy the deficiency she had noted. US West contends that McElwaine never responded to the draft confidentiality agreement or suggested any changes. McElwaine's attorneys argue that the confidentiality agreement was unnecessary and too broad. When US West answered McElwaine's complaint on June 5, 1996, it reiterated that it had already submitted a request for an administrative ruling from the IRS that would resolve the issue in a manner identical to McElwaine's demands. However, it did not offer to share its submission with McElwaine.

On August 28, 1996, the IRS formally approved of US West's proposal and issued a Compliance Statement mandating that US West pay the disputed claims within 90 days. US West waited almost one month before informing McElwaine of this development, ignoring McElwaine's inquiries regarding class certification and Rule 26 initial disclosures made after US West had received the IRS Compliance Statement.

By letter, on September 20, 1996, US West informed McElwaine that the IRS had approved its proposal and that it would pay the full extent of her claim within 90 days of the date of the IRS letter. US West included a copy of the IRS Compliance Statement and its original submission to the IRS. US West also urged McElwaine's attorneys to dismiss her suit in light of the pending payment. US West paid McElwaine $9,963.43 on November 21, 1996, and the other plan participants shortly thereafter. According to US West, the typical retiree received more than double the amount of death benefits originally paid.

US West filed a motion for summary judgment on September 30, 1996,[6] which the district court granted on June 8, 1997.[7] On June 19, 1997, McElwaine filed a petition for attorney fees and costs under 29 U.S.C. § 1132(g)(1), which authorizes discretionary attorney's fees to plan participants who prevail in an ERISA action. The district court denied this petition on March 16, 1998.

In the nine months between US West's motion for summary judgment and the district court's dismissal, McElwaine not only opposed US West's motion for summary judgment but continued to raise "new" issues alleging various errors in the method US West used to calculate benefits, and pressed ahead with efforts to certify the class of beneficiaries. Primarily, McElwaine put forth new theories intended to cast doubt on US West's entire calculation methodology. US West argues that these "new" theories are precluded because McElwaine failed to raise them at the administrative level. McElwaine now appeals the district court's denial of her petition for attorney fees.

## STANDARD OF REVIEW

 We are called upon to determine whether McElwaine is entitled to fees for any portion of her litigation against US West and whether the amount she seeks is reasonable. We review the district court's denial of a request for attorney fees for an abuse of discretion. *Hope v. Int'l Brotherhood of Electrical Workers*, 785 F.2d 826, 831 (9th Cir.1986). Because fee awards are discretionary, we may set aside a decision denying fees only if the district court abused its discretion, failed to state the reasons for its decision, or applied incorrect legal standards. *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir.1983). If we are to reverse the district court and award fees, we must conclude with "definite conviction" that the district court "made a clear error of judgment in its conclusion upon weighing relevant factors." *Hope*, 785 F.2d at 831.

---

**6.** This motion for summary judgment also opposed McElwaine's motion for class certification, filed September 3, 1996.

**7.** McElwaine's appeal of this decision was consolidated with her later appeal of the district court's denial of attorney fees. However, on appeal she only argues the denial of attorney fees and has, therefore, abandoned any other substantive issues.

## ANALYSIS

*1. Attorney Fees Under § 1132(g)(1)*

▉▉▉ Under the civil enforcement provisions of ERISA, a court may "in its discretion ... allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).[8] We apply a five-factor test to determine whether an ERISA fee award is appropriate. *See Hummell v. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980). The *"Hummell"* factors include (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all plan participants or resolve a significant legal question; and (5) the relative merits of the parties' positions.

▉▉▉ When we apply the *Hummell* factors, we must keep at the forefront ERISA's remedial purposes that "should be liberally construed in favor of protecting participants in employee benefit plans." *Smith*, 746 F.2d at 589. We also apply a "special circumstances" rule in which a successful ERISA participant "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Smith*, 746 F.2d at 589. *See also Ellison v. Shenango Incorporated Pension Board*, 956 F.2d 1268, 1274 (3rd Cir.1992) (rejecting the special circumstances rule for the Third Circuit, but observing that such a rule has been adopted in the Fourth, Eighth, and Ninth Circuits). "Recovery of attorney's fees does not necessarily depend upon the outcome." *Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382, 387 (9th Cir. 1994).

▉▉▉ McElwaine argues that the district court abused its discretion in denying fees under the *Hummell* test and applied

an incorrect legal standard. She claims that she is entitled to fees because (1) US West acted in bad faith; (2) US West is able to satisfy a fee award; (3) an award of fees will deter other employers from unlawfully withholding benefits and declining to provide crucial information regarding their remedial efforts; (4) her claim benefitted all retirees who had received a lump sum payment with a miscalculated death benefit; and (5) her position is relatively more meritorious. US West counters that fees are unwarranted because it had already taken steps to remedy the error before McElwaine filed her complaint and McElwaine's lawsuit did not yield any additional benefits. We find US West's arguments unavailing in light of its unwillingness to divulge its remedial efforts in a timely manner.

We focus our analysis on "who knew what when" about whether US West intended to honor its promise to pay its retirees the full amount owed. We note that the district court initially remarked that McElwaine's claim was "not frivolous or moot" at the time she filed her lawsuit because she "was unsure if she would receive the amount in dispute" and US West had "not provided a clear unequivocal commitment" about its intentions to pay her claim in full. When asked to award fees, however, the court observed that even though US West had not provided a "clear unequivocal commitment" to McElwaine at the time she filed her lawsuit, it "had already promised to pay additional benefits to Plaintiff and other retirees. Thus, there is no evidence that Plaintiff and the other retirees received any benefits as the result of this lawsuit."

When viewed with the benefit of hindsight, the district court's observation that neither McElwaine nor the other early retirees "received any benefits as a result of this lawsuit" is accurate. US West had submitted its proposed payment plan to the IRS in March 1996 before McElwaine

---

**8.** Fees are not available for the administrative portion of an ERISA appeal and McElwaine does not seek such fees. *See Cann v. Carpen-* *ters' Pension Trust Fund for Northern California*, 989 F.2d 313, 315–17 (9th Cir.1993).

filed her suit in district court in April and, therefore, McElwaine's lawsuit technically did not generate any new benefits for the affected retirees beyond the payment that US West had already committed to make. Hindsight, however, distorts an otherwise straightforward analysis, and we decline to apply that filter. Instead, we must look at what McElwaine knew at the critical time when she had to decide whether to file her complaint or risk a bar to her claim.

Faced with imminent running of the statute of limitations, McElwaine took sensible steps to preserve her claim. US West's open-ended, non-committal letter stating only that it "intended" to seek IRS approval of a plan to remedy the shortfall was not a promise to pay. We agree with the district court's initial observation that US West had "not provided a clear, unequivocal commitment about its commitment to fully account for its prior deficiency."

Our application of the *Hummell* factors persuades us that McElwaine is entitled to a reasonable attorney fee. The *Hummell* factors reflect a balancing and we need not find that each factor weighs in support of fees. *See Smith,* 746 F.2d at 590. The opposing party's culpability and bad faith is the first factor. The district court concluded that US West did not act in bad faith. However, bad faith is not a prerequisite to an ERISA fee award. *See Smith,* 746 F.2d at 590. We note that US West withheld assurances from McElwaine making it necessary for her to file her complaint. Even after McElwaine filed her complaint, US West continued to withhold details unless she signed a confidentiality agreement, and it waited for almost one month after receiving IRS approval before notifying McElwaine of its firm commitment to pay.

We have no trouble concluding that US West can pay the fee award without hardship. The remaining three factors similarly weigh in favor of awarding fees to McElwaine. A fee award would deter other employers from forcing beneficiaries to undertake costly litigation to preserve their claims. It is undisputed that the calculation error McElwaine discovered benefitted almost 3,000 similarly situated plan participants who, as a result of her diligence, received more than double the death benefit they would have otherwise received. Finally, we find McElwaine's position relatively more meritorious given that the initial mistake was US West's, and its delay in commitment forced her to file before the statute of limitations expired. Accordingly, we conclude that the *Hummell* factors support an award of a reasonable attorney fee and that the district court abused its discretion in denying fees. We find no circumstances that would make such an award unjust. *See Smith,* 746, F.3d at 589.

### 2. Fee Calculation

The question then is what fee is "reasonable" in the district court? At the outset, we note that attorney fees under § 1132(g)(1) are calculated using a hybrid lodestar / multiplier approach. *D'Emanuele v. Montgomery Ward Co.,* 904 F.2d 1379, 1383 (9th Cir.1990). To calculate the "lodestar" amount, we multiply the number of hours reasonably expended by the attorney(s) on the litigation by a reasonable hourly rate, raising or lowering the lodestar according to factors identified by this circuit. *Id.*

McElwaine requests $95,978.50 in fees and $21,165.59 in costs for work performed in the district court. This amount includes an "enhancement multiplier" that doubles the lodestar calculation. McElwaine argues that the enhancement is warranted because her attorneys took the case on a contingency fee basis. We do not include enhancement multipliers for contingency fee arrangements in ERISA cases. *See Cann v. Carpenters' Pension Trust Fund,* 989 F.2d 313, 317–18 (9th Cir.1993).[9] Fees, therefore, should be cal-

---

9. Prior to *Cann,* we did allow an enhancement factor for an ERISA contingency fee case. *D'Emanuele,* 904 F.2d at 1384. In between *D'Emanuele* and *Cann,* however, the

culated using the lodestar method without enhancement.

■ Next, we address whether McElwaine may recover fees for all work performed in the district court or whether only a portion of that work is eligible for fees. McElwaine insists that all work performed in the district court was necessary to diligently prosecute her claim. In district court, she submitted a fee petition requesting recovery of all fees incurred through the district court's grant of summary judgment in June 1997, to be augmented by an unspecified additional award for fees accumulated in seeking fee recovery at the appellate level.

We again look at "who knew what when." We conclude that we should distinguish between litigation pursued to obtain certainty that US West would satisfy its obligation and litigation pursued after that payment became certain. McElwaine should recover fees only for work up until the time she learned conclusively that US West would pay her claim in full.

We agree with US West that the decisive date is September 20, 1996, when US West notified one of McElwaine's attorneys that the IRS had recently approved its proposed payment plan. Although the IRS issued its Compliance Statement to US West on August 28th, requiring US West to make all outstanding payments within 90 days, there is no evidence that McElwaine knew of that decision until September 20th. In its September 20th letter, US West confirmed its commitment to pay McElwaine and all affected retirees in full, with interest, by the end of November of 1996, pursuant to the IRS' deadline. US West enclosed a copy of its initial submission made to the IRS in March of 1996 and the IRS Compliance Statement. Together, these documents committed to McElwaine that she and all similarly situated plan participants would imminently receive the full amount of benefits that US West owed. In short, nothing remained to be achieved by further litigation.

■ We are not persuaded that McElwaine's opposition to US West's September 30th motion for summary judgment was necessary or appropriate. Accordingly, we decline to award fees for McElwaine's efforts to keep her claim alive during the nine months between US West's motion for summary judgment and the district court's order dismissing her case. However, because we have determined that a fee award is appropriate for a portion of the litigation in district court, we conclude that McElwaine is entitled also to a reasonable attorney fee on appeal.

### CONCLUSION

We have determined that McElwaine is entitled to partial fees for the district court work and full fees on appeal. We refer the case to our Appellate Commissioner Peter Shaw to recommend amounts of fees and costs in district court and on appeal, provided as to the latter that McElwaine files with this court a timely request for fees and costs on appeal.

REVERSED.

Supreme Court decided *Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), which invalidated an enhancement in contingent fee cases that involve statutory attorney fees. Section 1132(g) of ERISA awards statutory attorney fees. *Cann* applied *Burlington* in an ERISA case and held that an enhancement was similarly prohibited.