**Kenneth L. MOGCK, an individual, Plaintiff,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, a Maine corporation; Group Long Term Disability Insurance Policy, Non–Participating, An Employee Welfare Benefits Plan Under Erisa, Defendants.**

**No. 99–CV–0201 LSP.**

United States District Court, S.D. California.

Sept. 16, 2003.

Thomas M. Monson and Susan L. Horner, of Miller Monson Peshel Polacek and Hoshaw, San Diego, CA, for Kenneth Mogck, Plaintiff.

Edwin A. Oster and Jenny Wang, Barger & Wolen, Irvine, CA, for Unum Life Insurance Company of America, Defendant.

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS [DOC. NOS. 66, 80]

PAPAS, United States Magistrate Judge.

Plaintiff Kenneth Mogck has filed a motion for attorneys' fees and costs in the above-captioned matter.[1] The Court has considered the arguments raised in the briefs and finds the matter suitable for

---

1. Plaintiff's original Notice of Motion was filed on February 11, 2003 [Doc. No. 66]. Plaintiff then filed an Amended Notice of Motion on February 14, 2003 [Doc. No. 80].

decision without oral argument. *See* S.D. Cal. Civ. R. 7.1(d)(1). For the reasons set forth below, Plaintiff's motion is **GRANTED IN PART**.

## I.

## BACKGROUND

The facts underlying this lawsuit arise from a March 25, 1993 motor vehicle accident in which Plaintiff sustained serious injuries. (Pl.'s Mem. at 1.) At the time of the accident, Plaintiff was insured for long term disability benefits under an insurance policy issued by Defendant UNUM Life Insurance Company of America.[2] Defendant paid Plaintiff occupational long term disability benefits for two years, from June 25, 1993 to June 25, 1995, and then terminated payment by letter dated June 1, 1995. (*Id.* at 1, 2.) The letter explained that Defendant would not extend benefits past June 25, 1995 as Defendant had determined that Plaintiff no longer met the definition of disability.[3]

After pursuing administrative remedies, Plaintiff filed suit against Defendant on February 5, 1999 [Doc. No. 1]. Defendant contended that Plaintiff's action was untimely. The parties filed cross-motions for summary adjudication on the statute of limitations issue. Magistrate Judge Cynthia G. Aaron,[4] finding that Plaintiff's action was contractually barred by the three-year time limitation set forth in Defendant's policy,[5] issued an order on September 22, 2000 granting Defendant's motion for summary adjudication and denying Plaintiff's motion for partial summary adjudication [Doc. No. 36].[6] Plaintiff appealed. On June 10, 2002, the Ninth Circuit issued a published opinion reversing and remanding the case for further proceedings. *See Mogck v. Unum Life Ins. Co. of America,* 292 F.3d 1025 (9th Cir.2002). The appeals court disagreed with this Court's determination that Defendant's June 1, 1995 letter constituted an adequate "request for proof" under the policy, and found that Defendant thus "never took the steps necessary to trigger the running of the contractual time limitation under the policy." *Mogck,* 292 F.3d at 1028. Accordingly, the Ninth Circuit held that Plaintiff's action was not time-barred. *Id.* at 1029.

2. Under the terms of the policy, a qualified claimant was paid approximately sixty-six percent of his basic monthly earnings, following a ninety-one day elimination period. *Mogck v. Unum Life Ins. Co. of America,* 292 F.3d 1025, 1026 (9th Cir.2002). Plaintiff, an electrician, earned $48,157 per year before becoming disabled. (Pl.'s Mem. at 1.)

3. The policy defined "disability" during the first two years of a claim as the insured's inability to perform each of the material duties of the participant's regular occupation. *Mogck,* 292 F.3d at 1027. "Disability" after two years was defined as the insured's inability to perform each of the material duties of "any gainful occupation for which he is reasonably fitted by training, education, or experience." *Id.* Defendant contends that Plaintiff "was a master electrician who had the training, education and experience to work in a number of supervisory positions available in his local area." (Def.'s Mem. at 3 n. 1.)

4. In accordance with 28 U.S.C. § 636 ©, Fed. R. Civ. Proc. 73, and the consent of the parties, this matter was referred to Magistrate Judge Aaron by order dated November 9, 1999 [Doc. Nos. 10, 11]. Following Magistrate Judge Aaron's appointment to the California Court of Appeal, this matter was referred to Magistrate Judge Leo S. Papas on February 4, 2003, pursuant to the above-cited authorities and the consent of the parties [Doc. No. 65].

5. The policy provided: "A claimant or the claimant's representative cannot start any legal action: ... more than 3 years after the time proof of claim is required." *Mogck,* 292 F.3d at 1027.

6. Magistrate Judge Aaron's September 22, 2000 order also denied as moot the parties' cross-motions regarding the permissible scope of discovery.

On remand, the parties participated in a Settlement Conference before Magistrate Judge James F. Stiven, which resulted in a settlement agreement dated November 13, 2002. (Pl.'s Mem. at 4; Def.'s Mem. at 4.) [7] The terms of the settlement included separate lump-sum payments to Plaintiff and Plaintiff's attorneys' firm, Miller, Monson. (Settlement Agreement and Release of Claims at 1.) The parties and Magistrate Judge Stiven agreed that Plaintiff's request for statutory attorneys' fees and costs would be submitted to the Court by formal motion.

## II.

## DISCUSSION

### A. *Entitlement to Attorneys' Fees and Costs*

 The long term disability contract at issue in this case is governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* In an ERISA action, a court in its discretion may award attorneys' fees and costs to either party. 29 U.S.C. § 1132(g)(1). The Ninth Circuit uses a five-factor test to determine whether an ERISA fee award is appropriate. *See Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir.1980).[8] The five *"Hummell"* factors include: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative

---

7. Plaintiff initially filed a copy of the parties' confidential settlement agreement under seal. Pursuant to this Court's April 7, 2003 Order [Doc. No. 90], the settlement agreement was stricken from the docket and instead is deemed lodged with the chambers of Magistrate Judge Papas.

8. Plaintiff's argument that a *Hummell* analysis is not required (*see* Pl.'s Mem. at 10–12) is unpersuasive as the cases upon which Plaintiff relies are distinguishable. In *Nelson v. EG & G Energy Measurements Group, Inc.*, 37 F.3d 1384 (9th Cir.1994), the court stated that when a plaintiff prevails completely on the sole issue in question, receives the entire relief sought, and resolves a significant legal question, and these results are evident from an order of the district court, it is unnecessary for the court to engage in an analysis of the *Hummell* factors. *Nelson*, 37 F.3d at 1392. *See also Grosz–Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154 (9th Cir.2001). In *Nelson*, the plaintiffs prevailed on a motion for summary judgment on the issue that constituted the "crux of th[e] case"—the correct valuation date for individual retirement savings accounts. *Nelson*, 37 F.3d at 1386, 1389. In this case, it is *not* evident from any order of this Court, or any court, that Plaintiff prevailed on the "sole issue in question." Although Plaintiff relies on the Ninth Circuit opinion in *Mogck* to show he prevailed on a significant issue—the statute of limitations issue—this by no means was the sole issue in question in this case. (*See, e.g.,* Decl. of Monson in Supp. of Mot. at ¶ 17: "Of the approximately 10 sub-issues briefed on appeal, and the three primary issues orally argued, the Ninth Circuit reversed and remanded on just one of the issues." *See also* Decl. of Horner in Reply at ¶ 9: "[This case] involved one claim for benefits, *under which a number of issues, both factual and legal, were present"* [emphasis in original].) Importantly, Plaintiff's prevailing on appeal did not entail that Plaintiff was entitled to the benefits sued upon. It is also not evident from any order of this Court, or any other court, that Plaintiff received the entire relief sought. Indeed, the amounts set forth in Section III of Plaintiff's Motion, "Amount at Stake in this Action," (*see* Pl.'s Mem. at 4–6), when compared to the amount received by Plaintiff by way of the parties' confidential settlement agreement, demonstrate that Plaintiff did *not* receive the full amount of monetary compensation requested. Accordingly, a *Hummell* analysis is appropriate in this case.

merits of the parties' positions. *Hummell*, 634 F.2d at 453.

When applying the *Hummell* factors, a district court should apply its discretion with the remedial purposes of ERISA in mind. *See Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir.1984); *see also McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999). These purposes "should be liberally construed in favor of protecting participants in employee benefit plans." *Smith*, 746 F.2d at 589. "As a general rule, ERISA employee plaintiffs should be entitled to a reasonable attorneys' fee 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Id.*, citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

In analyzing the *Hummell* factors, no one factor is necessarily decisive, and some may not be pertinent in a given case. *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir.1984). The *Hummell* factors "reflect a balancing" and not all factors need to weigh in favor of a fee award. *McElwaine*, 176 F.3d at 1173. The Court will discuss each factor in turn.

### 1. Defendant's Culpability or Bad Faith

Plaintiff correctly argues that although a finding of bad faith will always justify a fee award, it is not required. *See Smith*, 746 F.2d at 590. Plaintiff goes on to argue that, in any event, Defendant *did* demonstrate bad faith in its handling of Plaintiff's disability claim. (Pl.'s Mem. at 13.) As Defendant points out, however, the parties never litigated the merits of Plaintiff's claim, and thus the propriety of Defendant's claims decision was never adjudicated. Accordingly, the Court does not find evidence that Defendant acted in bad faith in this matter. This factor weighs against awarding attorneys' fees to Plaintiff.

### 2. Defendant's Ability to Satisfy a Fee Award

Defendant concedes that it has the ability to satisfy a fee award. (Def.'s Mem. at 8.) Thus, this factor weighs in favor of awarding attorneys' fees to Plaintiff.[9]

### 3. Deterrence

This factor requires the Court to consider whether an award of fees against Defendant would deter others from similar conduct in the future. Plaintiff argues that unreasonable claims procedures and decisions would be deterred with an award of attorneys' fees, a positive result. *See, e.g., Smith*, 746 F.2d at 590 ("An award of reasonable attorney's fees would deter [insurers] from opposing employee participant claims if the amount of the claim and the reasonableness of the employee's claims are such that the plaintiff's chances of success are great."). *See also McElwaine*, 176 F.3d at 1173 ("A fee award would deter other [insurers] from forcing beneficiaries to undertake costly litigation to preserve their claims."). Defendant argues that an award of fees would deter insurers from pursuing legitimate defenses, a negative result. *See, e.g., Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1495 (9th Cir. 1990) (declining to award attorneys' fees when, *inter alia*, the defendant's conduct was not of the sort that required the court to deter others from acting similarly in the future). Although Plaintiff is correct that unreasonable claims handling practices might be curbed with an award of attor-

---

**9.** "Based on this factor alone, absent special circumstances, a prevailing ERISA employee should ordinarily receive attorney's fees from the defendant." *Smith*, 746 F.2d at 590.

neys' fees in this case, there has been no showing that Defendant's claims handling was unreasonable. And, although Defendant's position regarding the statute of limitations was ultimately disagreed with by the Ninth Circuit, it was a legitimate position for it to take, as evidenced by this Court's initial ruling in favor of Defendant on summary adjudication [*see* Doc. No. 36]. Therefore, the Court finds that this factor weighs neither in favor of nor against an award of attorneys' fees to Plaintiff.

### 4. Benefit to All Plan Participants and Beneficiaries or Resolution of a Significant Legal Question

Plaintiff argues that he succeeded in obtaining a "published Circuit determination interpreting terms of the contract and insurer disclosure duties which, if violated, will bar enforcement of a time limitations bar." (Pl.'s Mem. at 16.) Defendant counters that Plaintiff brought suit to benefit himself only, that he negotiated a settlement for himself only, and that the Ninth Circuit's decision does not mean that Plaintiff conferred a benefit to other ERISA plan participants, in that the decision was specific to the facts of this case and the language in Defendant's insurance policy. (Def.'s Mem. at 9–10.)

■ Although Plaintiff brought this suit to benefit himself, the Court agrees that Plaintiff's suit, and appeal, could benefit ERISA plan participants and beneficiaries by helping to resolve contractual statute of limitations and contractual language interpretation issues. "[W]hen the positions of both parties have some merit ... a decision clarifying the terms of a plan after litigation would 'benefit all participants and beneficiaries' by settling a disputed provision or an ambiguity." *Smith,* 746 F.2d at 590. Such a decision "often depend[s] on a plaintiff's initiative in bringing suit." *Id., quoting Carpenters S. Cal. Admin. Corp.,* 726 F.2d at 1416. Therefore,

this factor weighs in favor of awarding attorneys' fees to Plaintiff.

### 5. The Relative Merits of the Parties' Positions

Plaintiff argues that both his disability claim and his position on the statute of limitations had strong merit, as evidenced by the contents of the administrative record and the Ninth Circuit opinion respectively. (Pl.'s Mem. at 17.) Defendant contends that the merits of Plaintiff's disability claim were never determined because the case settled before the issue of whether Plaintiff was disabled under Defendant's plan was litigated. (Def.'s Mem. at 10.) Defendant also again argues that its position on the statute of limitations was valid, as demonstrated by this Court's initial ruling in its favor. (*Id.*)

■ The Court agrees that there is no evidence demonstrating the merits of Plaintiff's disability claim, as the case settled before the merits were litigated. The Court also agrees that Defendant's stance on the statute of limitations was legitimate, even though the Ninth Circuit ultimately ruled against Defendant. However, "the relative merits of the parties' positions ... is, in the final analysis, the result obtained by the plaintiff." *Smith,* 746 F.2d at 590. "By way of settlement, [Plaintiff] received a portion of what he brought suit to recover, and so crossed the 'statutory threshold' entitling him to recover fees from the defendant." *Id.* at 591 (*citing Hensley,* 461 U.S. at 434–35, 103 S.Ct. 1933.) Thus, this factor weighs in favor of awarding attorneys' fees to Plaintiff.

After balancing the *Hummell* factors, and finding no special circumstances that would render an award of attorneys' fees unjust (*see Smith,* 746 F.2d at 589), this Court exercises its discretion and awards Plaintiff his reasonable attorneys' fees as set forth below.

## B. *Fee Calculation*

Plaintiff requests fees in the amount of $351,217.20, consisting of 175.3 hours of work by Attorney Monson at $350.00 per hour, 868.8 hours of work by Attorney Horner at $325.00 per hour, 63.6 hours of paralegal time at $65.00 per hour, and 153.1 hours of secretary time at $22.00 per hour. (Pl.'s Mem. at 23.) In addition, Plaintiff seeks additional fees for "approximately two days' work" to compensate Plaintiff for filing the reply and objections to evidence regarding the instant motion,[10] as well as for three hours spent reviewing the papers for confidential information and resubmitting the reply brief.[11] Defendant contends that the amount of fees sought are "excessive and patently unreasonable." (Def.'s Mem. at 11.)

█ Attorneys' fees in ERISA actions are calculated using a hybrid lodestar/multiplier approach. *See Van Gerwen v. Guarantee Mut. Life Co.,* 214 F.3d 1041, 1045 (9th Cir.2000); *McElwaine,* 176 F.3d at 1173. The court first determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Van Gerwen,* 214 F.3d at 1045. The party seeking a fee award must submit evidence supporting the hours worked and the rate claimed. *Id.* The court may then adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. *Id.*

█ To determine the reasonable amount of attorneys' fees, courts shall consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation, and ability of the attorneys; (9) the "undesirability" of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases. *Van Gerwen,* 214 F.3d at 1045 n. 2, *citing Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. 1933.

### 1. Hourly Rate

█ Plaintiff claims that his attorneys are entitled to recover the "market rates" of $350.00 per hour for Monson and $325.00 per hour for Horner. In support of his claim, Plaintiff submits declarations from eight ERISA attorneys who practice in the Ninth Circuit to demonstrate that Monson's and Horner's actual fees of $295.00 and $250.00, respectively, are below prevailing market rates. Defendant argues that Plaintiff's counsels' normal hourly rates, not the "market rates," should be used.

After review of the eleven factors set forth above, and the attorney declarations submitted by Plaintiff, the Court finds that the rates of $350.00 per hour for Monson and $325.00 per hour for Horner are reasonable attorneys' rates in this case. Monson's and Horner's actual rates indeed appear to be below prevailing market rates. Although the Court recognizes that the "relevant community," when determin-

---

**10.** Plaintiff's initial fee request included eight hours of Horner's time for preparation of the reply brief in this matter. (*See* Decl. of Monson in Supp. of Mot., Ex. A at 33.) Plaintiff claims that "the type of Opposition" received from Defendant required that more time than anticipated was spent preparing the reply and accompanying documents, hence the request for additional fees. (*See* Decl. of Horner in Reply at ¶ 16.)

**11.** *See* this Court's Order Regarding Plaintiff's Motion for Attorneys' Fees filed April 7, 2003 [Doc. No. 90] for further details.

ing appropriate attorneys' rates, is generally the one in which the district court sits (*see Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir.1991), *overruled on other grounds by Davis v. City and County of San Francisco*, 976 F.2d 1536, 1556 (9th Cir.1992)), it is appropriate to consider the declarations of attorneys in other jurisdictions because ERISA cases involve a national standard, and attorneys practicing ERISA law in the Ninth Circuit tend to practice in different districts. Furthermore, the Court observes that ERISA cases are often considered to be complex, ERISA plaintiff cases are often undesirable, and Plaintiff's attorneys possess extensive experience in ERISA law.

Accordingly, the Court finds that the $350.00 and $325.00 per hour rates sought by Plaintiff are within the realm of reasonableness. As Defendant has not objected to the rates of Plaintiff's claimed paralegal and secretarial fees [12] of $65.00 and $22.00 per hour, respectively, the Court finds that Plaintiff is entitled to these hourly rates.

## 2. Amount of Hours Claimed

■ In determining reasonable hours, the party requesting fees bears the burden of submitting detailed time records justifying the hours claimed to have been expended. *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. Those hours may be reduced by the court where documentation of the hours is inadequate, if the case was overstaffed and hours are duplicated, or if the hours expended are deemed excessive or

otherwise unnecessary. *Id.* at 433–34, 103 S.Ct. 1933.

The amount of hours claimed by Plaintiff are as follows: 175.3 hours by Attorney Monson, 868.8 hours by Attorney Horner, 63.6 hours of paralegal time, and 153.1 hours of secretary time. Defendant presents several arguments countering the number of hours claimed, each of which will be addressed in turn.

### a. Excessive hours

Defendant argues that "this litigation involved nothing more than the applicability of an ERISA statute of limitations provision" which should have been litigated more "efficiently and economically." (Def.'s Mem. at 18.) In support of its argument, Defendant's counsel's paralegal created a matrix categorizing the tasks performed by Plaintiff's attorneys. Although Plaintiff objected to and moved to strike the paralegal's declaration, including the matrix,[13] Plaintiff's attorneys themselves used the matrix, added to the categories therein, and recategorized some of the tasks performed.

After performing an exhaustive review of Plaintiff's attorneys' billing statements, this Court has formulated its own categorization of time spent by Plaintiff's attorneys on this case. The matrix attached hereto as Exhibit "A" provides a comparison between the categorization of tasks by Defendant, Plaintiff, and this Court. After full consideration of this matter, the Court

---

**12.** Although Defendant does not dispute the *hourly rate* of fees for secretarial time, Defendant does dispute the manner in which the secretarial time was accounted for. Defendant's argument is addressed in greater detail below.

**13.** The Court overrules and denies Plaintiff's Objection to Evidence and Motion to Strike the Declaration of Defense "Paralegal" Cynthia J. Huffaker [Doc. No. 95]. The Declara-

tion of Susan L. Horner in Reply to Defendant's Opposition [Doc. No. 97] and Exhibit A attached thereto (in which Attorney Horner adds to and recategorizes the hours in the matrix) are sufficient to counter the claimed deficiencies with Paralegal Huffaker's matrix. Additionally, although Plaintiff and the Court do not agree with all of the numbers set forth in Huffaker's matrix, it serves as a useful baseline for categorizing the time spent on this matter by Plaintiff's counsel.

agrees in part and disagrees in part with Defendant's arguments that the hours claimed by Plaintiff should be reduced.

■ Defendant contends that the hours spent preparing for and attending the Early Neutral Evaluation Conference (ENE) (45.8 hours per Defendant, 29.4 hours per Plaintiff, 34.8 per the Court) were excessive. The Court, however, finds it difficult to objectively criticize the amount of time spent preparing for the ENE. Plaintiffs in ERISA matters generally must spend a great amount of time preparing for conferences and other proceedings because ERISA cases tend to be factually intensive. Thus, the Court declines to second-guess the amount of time spent by Plaintiff's attorneys preparing for the ENE.

Defendant also contends that the hours spent preparing for and attending the settlement conferences (72.7 hours per Defendant, 60.3 hours per Plaintiff, 114.7 hours per the Court [14]) were excessive. According to the Court's calculations, 44.4 of the hours spent on settlement conferences related to the first settlement conference held on November 17, 1999, and 70.3 hours related to the second settlement conference held on October 24, 2002. Again, the Court finds it difficult to objectively criticize Plaintiff's counsel for their preparation time, given the fact-intensive nature of ERISA cases. Additionally, the Court notes that the October 24, 2002, settlement conference was the first key "event" at the district court after remand by the Ninth Circuit, and thus it is understandable that extra time would have been needed to prepare for that conference. Thus, the

Court again declines to second-guess the efforts by Plaintiff's attorneys, particularly when these efforts eventually led to the settlement in this case.

■ Defendant further contends that the hours spent on the motions for summary adjudication (206.9—211.0 hours) were excessive. The Court finds the amount of time spent by Plaintiff's attorneys was reasonable, given the critical nature of the motion to Plaintiff's case. Thus, the Court declines Defendant's request to reduce these hours.

■ Finally, Defendant argues that the hours spent on Plaintiff's appeal (354.6 hours per Defendant, 475.7 hours per Plaintiff [including paralegal hours], and 318.6 hours per the Court) were excessive. The Court disagrees. Plaintiff's attorneys obtained a favorable result on appeal, should be rewarded for that effort, and the hours expended were reasonable for that effort. The Court will, however, cut the 6.0 hours billed by Attorney Monson on October 6, 2001 in relation to the oral argument before the Ninth Circuit. Monson did not participate in the argument. According to his Declaration, Monson "was present in the courtroom listening to" the argument.[15]

b. "Block-billed" time entries

■ The Court agrees with Defendant that Plaintiff's attorneys' billing entries make it difficult to assess how much time was spent on each particular task. Plaintiff's attorneys, rather than billing separately for each task performed, billed an undivided amount of time on each date.

14. *See* Exhibit A attached hereto for an explanation of some of the discrepancies between the calculations of hours.

15. Defendant also argues that Plaintiff's research hours were excessive. Because the Court has incorporated the research hours

into the various events the research related to (ENE, settlement conference, appeal, etc.), the Court will not separately address this argument. In any event, the research hours calculated by Defendant, 310.6, is inflated, as discussed in footnote 7 of Exhibit A, attached hereto.

*See* Decl. of Monson in Supp. of Mot., Ex. A. However, the Court finds that the billing entries sufficiently document the hours spent on the case by Miller, Monson. *See Hensley*, 461 U.S. at 433, 437 n. 12, 103 S.Ct. 1933 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures."). Therefore, the Court denies Defendant's request to deny fees for all "block-billed" entries.

### c. Non-attorney work performed by attorneys

 Defendant argues that Horner's billing of 77.8 hours to prepare a chronology of documents in this case should be billed at Miller, Monson's $65.00 per hour paralegal rate rather than Horner's attorney rate.[16] Attorney Horner describes the preparation of the chronology as "reviewing of the documents and selecting the pertinent facts and information." The Court agrees that this is a paralegal task. "[W]hen a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable." *New Mexico Citizens for Clean Air and Water v. Espanola Mercantile Co., Inc.*, 72 F.3d 830, 835 (10th Cir.1996). However, the Court finds that Horner spent 49.6 hours, not 77.8 hours, on the chronology. Thus, the Court reduces the fee award by $12,896.00 (49.6 hours × $260 per hour[17]).

In addition to preparing a chronology, Horner engaged in other tasks that would have been easily delegable to either a paralegal or secretary. For example, on 9/7/00, Horner billed .1 hours to "Calendar rescheduled pre-trial conference." On 12/17/01, she billed for calling the Ninth Circuit regarding "page limit and style and cover color." And, on 11/14/01, Horner's billing entry included making "reservations for travel to Pasadena." Other paralegal/secretarial tasks billed for by Horner include creating files, reorganizing files, preparing tables of contents and tables of authorities, and preparing indexes. *See, e.g.*, Horner's billing entries on 2/17/00, 11/1/00, 3/9/01, 4/9/01, 7/17/01, 7/18/01, 7/19/01, 11/21/01, 12/11/01, 8/14/02, and 8/15/02. Therefore, the Court reduces Horner's requested hours by 3%.[18]

### d. Recovery of post-settlement fees

 Litigation pursued to obtain benefits should be distinguished from litigation pursued after payment of benefits became certain. *See, e.g., McElwaine*, 176 F.3d at 1174. Defendant thus argues that Plaintiff is not entitled to recover fees after November 13, 2002, the date of the settlement agreement in this case. However, the Court finds that, other than preparing the instant motion, Plaintiff's attorneys billed only 3.2 hours after November 13, 2002. The Court believes that this time was reasonably spent reviewing the settlement agreement, discussing the terms of the

---

**16.** The Court grants Defendant's request that the Court take judicial notice of the November 6, 2002 Order by the Honorable Barry Ted Moskowitz in *Arkin v. Fortis Benefits Ins. Co., etc.*, 01–CV–0269 BTM (RBB). In *Arkin*, Judge Moskowitz found that a chronology prepared by Horner should be charged at the paralegal rate. Plaintiff's objection to evidence and motion to strike the request for judicial notice are overruled and denied.

**17.** $325.00 per hour (Horner's "market" rate) minus $65.00 per hour (Miller Monson's paralegal rate).

**18.** The Court has subtracted a percentage of Horner's hours, rather than an actual number of hours, because, as discussed above, the manner in which Plaintiff's attorneys entered their billing makes it difficult to determine exactly how much time was spent on each individual task.

settlement with Plaintiff, and communicating with the Court.

██ With respect to the fees spent on preparing the instant motion, Defendant argues that this time—75.4 hours, by the Court's calculation—should be denied, or, in the alternative, reduced. Again, the Court is not inclined to second-guess the amount of time spent by counsel in preparing a motion which involves issues significant to the case, particularly when, as here, the motion is successful.

██ With respect to the time spent by Plaintiff's counsel on preparation of the reply brief for the instant motion, the initial eight hours estimated by Plaintiff's counsel appears reasonable to the Court. The Court disagrees, however, with Horner's argument that her work in preparing a reply brief was "increased due to the nature of the type of Opposition" received (*see* Decl. of Horner in Reply at ¶ 16), and thus declines Plaintiff's request for additional fees for approximately two days' work. The Court also declines to award an additional three hours of time spent by Plaintiff for reviewing the motion and opposition papers for confidential information and resubmitting the reply brief.[19]

### e. Secretarial time is unaccounted for

██ Fees for secretarial time may be included in an award for attorneys' fees. *See, e.g., D'Emanuele v. Montgomery Ward & Co., Inc.,* 904 F.2d 1379, 1387 (9th Cir.1990), *overruled on other grounds* by *Burlington v. Dague,* 505 U.S. 557, 112

S.Ct. 2638, 120 L.Ed.2d 449 (1992). However, like attorney time, secretarial time must be sufficiently documented. *D'Emanuele,* 904 F.2d at 1387. Miller, Monson's billing entries for secretarial time do not include any information describing the tasks performed. Although Attorney Monson provides a general description of the secretarial tasks performed, including "telephone contact[s] . . ., assisting attorneys and paralegals with finalizing and filing of motion papers, typing letters . . ., and contact with the client" (*see* Decl. of Monson in Support of Mot. at ¶ 26), this generalized description provides insufficient support for the secretarial fees requested. Thus, the Court reduces the requested secretarial fees by 25%.

### f. Other reductions

██ Although not raised by Defendant, the Court finds that there are additional reasons to reduce Plaintiff's attorneys' bills. First, the Court finds that Monson and Horner billed an inordinate amount of time for interoffice conferences. In reviewing Miller, Monson's bills, the Court has noted numerous occasions in which Attorneys Monson and Horner consulted and coordinated with one another. Although it has been recognized that "the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort" (*see McGrath v. County of Nevada,* 67 F.3d 248, 255 (9th Cir.1995)), the Court believes that Monson and Horner inappropriately billed for communicating with one another [20] and delegating tasks to office personnel [21].

---

**19.** Furthermore, the Court overrules and denies Plaintiff's Objection to Evidence and Motion to Strike Portions of the Declaration of Defense Counsel Edwin A. Oster. The Court has placed appropriate weight on the personal opinions expressed by Oster and the other attorneys, including Plaintiff's attorneys, throughout the papers relating to the instant motion.

**20.** *See, e.g.,* billing entries on 10/21/99, 11/18/99, 2/2/00, 2/24/00, 3/20/00, 3/21/00, 3/27/00, 3/29/00, 4/5/00, 5/9/00, 5/10/00, 10/18/00, 3/6/01 (2.9 hours!), 5/7/01, 7/12/01, and 12/21/01.

**21.** *See, e.g.,* billing entries on 3/7/01, 12/6/01, 12/28/01, 10/18/02, 10/23/02, and 10/24/02.

Counsel submitting fee applications shall exclude hours that are "excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 432–34, 103 S.Ct. 1933. Furthermore, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* . . . ." *Id.* at 434, 103 S.Ct. at 1940. This Court doubts that Miller, Monson would have charged Plaintiff for all of Monson's and Horner's consultations with one another (it is not Plaintiff's [nor Defendant's] fault that Miller, Monson chose to staff the case with two attorneys), and thus, as discussed further below, Plaintiff's requested attorney hours will be reduced accordingly.

Additionally, the Court finds that Monson's and Horner's billing entries reflect, at times, double-billing and/or a duplication of effort. For example, on 2/21/00, Monson and Horner each billed for reviewing Defendant's objection to Plaintiff's expert designation. On 6/10/02 and 6/11/02, Monson and Horner each billed for reviewing the Ninth Circuit's opinion in this case. On 11/5/02, both attorneys billed for reviewing Magistrate Judge Stiven's settlement recommendation. These entries provide further support for a reduction in Plaintiff's requested attorney hours, as these hours were not "reasonably expended." *See Hensley*, 461 U.S. at 434, 103 S.Ct. 1933.

Finally, the Court notes that some of Plaintiff's attorneys' billing entries were vague and thus do not support the hours claimed. *See, e.g.,* 2/10/00 billing entry for "continued work on case." *See also* 2/21/01 billing entry for "research of issues." Additionally, Plaintiff's attorneys billed for correcting errors previously made. *See, e.g.,* 5/10/01 billing entry, in which Horner billed 2.1 hours for "Telephone call from Mr. Wong at 9th Circuit

re: font in footnotes; call to office; review for corrections and review brief format and pagination." Defendant should not be required to pay for Plaintiff's attorneys to fix their own errors.

Pursuant to the above, the Court reduces Monson's and Horner's requested hours by 10% each.

### 3. Plaintiff's Request for an Enhancement to the Lodestar

■■■■■ There is a strong presumption that the lodestar figure represents a reasonable attorneys' fee. *United Steelworkers of America v. Phelps Dodge Corp.,* 896 F.2d 403, 406 (9th Cir.1990); *Jordan v. Multnomah County,* 815 F.2d at 1262 (9th Cir.1987). Upward or downward adjustments to the lodestar fee occur only in "rare, exceptional cases." *Cunningham v. County of Los Angeles,* 879 F.2d 481, 487 (9th Cir.1988). In considering the degree of success achieved by Plaintiff in this case, the Court finds that the hours reasonably expended on this matter are a satisfactory basis for a fee award, and that no adjustment is necessary. *See, e.g., Hensley,* 461 U.S. at 435, 103 S.Ct. 1933 (stating that an enhanced award is appropriate only "in some cases of exceptional success"). Therefore, the Court declines Plaintiff's request for an upward enhancement of the lodestar figure.

### C. *Costs*

■■■■ Defendant does not dispute the amount of costs claimed by Plaintiff, and the costs requested are sufficiently documented. The Court awards Plaintiff $3,246.39 in costs.

### III.

### CONCLUSION

For the reasons set forth above, this Court hereby **GRANTS IN PART** Plaintiff's Motion for Attorneys' Fees and

Costs. The Court awards Plaintiff $285,869.00 in attorneys' fees (151.8 hours at $350 per hour for Monson, 755.8 hours at $325 per hour for Horner, minus $12,896.00), $4,134.00 in paralegal fees (63.6 hours at $65.00 per hour), $2,525.60 in secretarial fees (114.8 hours at $22.00 per hour), and $3,246.39 in costs for a total of $295,774.99.

Payment shall be issued by Defendant to Plaintiff's counsel within thirty days of the "Filed" date of this Order. The Clerk of the Court shall enter judgment pursuant to the terms of this Order.

**IT IS SO ORDERED.**

**EXHIBIT A**

| TASKS | DEFENDANT'S NUMBERS[1] | PLAINTIFF'S NUMBERS | COURT'S NUMBERS[2] |
|---|---|---|---|
| Prelitigation | 13.2 | 13.2 | 13.2 |
| Pleadings | 7.0 | 6.3 | 6.1 |
| ENE | 45.8 | 29.4 | 34.8 |
| Settlement Conferences | 72.7 | 60.3 | 114.7 |
| Motions for Summary Adjudication | 211.0 | 206.9 | 209.9 |
| Appeal | 354.6 | 475.7[3] | 318.6 |
| Attorneys' Fees Motion | 56.6 | 47.9 | 75.4 |
| Post–Settlement Work | 58.5[4] | — | 3.2[5] |
| Research | 310.6[6] | —[7] | 45.6[8] |
| Chronology | 84.4 | Not specified | 49.6 |
| Secretary | 136.7 | 153.1 | Analyzed separately |
| Discovery[9] | — | 134.0 | 125.0 |
| Court Status Conferences | — | 10.1 | 7.9 |
| Defendant's Costs Motion | — | 23.7 | 23.2 |
| Social Security Offsets | — | 8.5 | 10.5 |
| Miscellaneous | — | — | 6.4 |
| TOTAL | | | 1044.1 |

1. There are large discrepancies between the numbers in several of the categories because both Defendant's and Plaintiff's numbers include paralegal and/or secretary time. The Court's numbers include attorney time only, as the paralegal and secretarial fees are addressed separately. Additionally, Plaintiff's attorneys failed to categorize some of the tasks performed. (*See* Decl. of Horner in Reply, Ex. A at 29–32.)

2. Because Plaintiff's attorneys did not track the amount of time spent on each task within each billing entry, two or sometimes three categories were assigned to some billing entries. When it was not possible for the Court to reasonably determine the amount of time spent on a category of task within a billing entry, the Court split the amount billed into halves or thirds, as appropriate. For example, on 8/2/99, Attorney Horner billed 5.5 hours for "Continue with chronology and document content and ENEC conference statement." (*See* Decl. of Horner in Reply, Ex. A at 3.) Because Attorney Horner did not allocate her time between the two tasks, the Court applied half the time to the "ENE" category and half the time to the "Chronology" category.

3. Plaintiff's counsels' breakdown of these hours is as follows: 135.0 hours on Plaintiff's opening brief, 189.0 hours on Plaintiff's reply brief, 21.3 hours on Plaintiff's motion to strike portions of Defendant's brief, 7.0 hours on Plaintiff's notice of new cases, 56.8 hours on preparation for and attendance at oral argument, and 65.6 hours on Plaintiff's supplemental letter brief requested by the appeals court.
Due to the large discrepancy between its numbers and Plaintiff's numbers, the Court recalculated the hours in Plaintiff's categorization, and found that Plaintiff miscalculated the number of hours spent on the reply brief—it was 53.6 hours, not 189.0 hours. (*See* Decl. of Horner in Reply, Ex. A at 20–21 (the "6b" categorizations)). Thus, Plaintiff's

figure for this category should be 340.3, a number much closer to the Court's number of 318.6 than Plaintiff's original number of 475.7.

4. Defendant's number apparently includes all work performed after November 13, 2002, the date of the settlement agreement in this case, including work performed in relation to the instant motion.

5. The Court's number excludes work performed in relation to the instant motion. Those hours are included in the "Attorneys' Fees Motion" category.

6. Paralegal Huffaker admits that in calculating the number of hours spent on research, she "included time from all entries in the invoice that mention or refer to research, reading cases, LEXIS and shepardizing." (Decl. of Huffaker in Supp. of Def.'s Opp'n at ¶ 5.) Because some billing entries mention research *in addition to* other tasks, the Court believes Defendant's number includes time not actually spent on research alone. Additionally, the Court believes it more appropriate to include any legal research performed in the category to which the research relates, e.g. Settlement Conferences, Appeal, etc.

7. Like the Court, Plaintiff's attorneys incorporated all research time into the other corresponding categories.

8. Where possible, this Court incorporated all research time into the categories corresponding to the research performed. The research hours that the Court was unable to easily categorize remain in the "Research" category.

9. Defendant's original matrix stopped at the "Secretary" category. Plaintiff's attorneys added four categories to the matrix: Discovery, Court Status Conferences, Defendant's Costs Motion, and Social Security Offsets. The Court added the final category, Miscellaneous, to the matrix.